**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Juan B. CRUZ, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 22, 2013.

Filed July 17, 2013.

Joshua G. Villari, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and Anthony V. Pomeranz, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: OLSON, WECHT and

COLVILLE,* JJ.

OPINION BY WECHT, J.:

Juan Cruz ("Appellant") appeals from the judgment of sentence entered on January 12, 2006. We affirm.

Viewing the evidence in the light most favorable to the Commonwealth, as we must, the evidence at Appellant's jury trial established the following factual background:

On May 8, 2004, at approximately 8:40 p.m., a blue Oldsmobile Toronado was travelling southbound on 5th Street near 67th Avenue when it struck two pedestrians, Evelyn ("Evelyn") and Lynda ("Lynda") Hernandez, as they were crossing the street. Both were transported to Albert Einstein Hospital with internal injuries, lacerations, and head trauma. Lynda, age 4, was pronounced dead at approximately 9:00 p.m. as a result of injuries sustained in the accident. Evelyn, age 15, was transferred to The Children's Hospital of Philadelphia ("CHOP") where she remained in a coma for four months and also suffered substantial paralysis on the right ride of her body.

Two witnesses, Lewis Duncan ("Duncan") and Malcolm Harper ("Harper"), saw the accident from Duncan's car which was parked near the scene of the accident. Duncan testified that a man with facial hair driving a four door burgundy car "blew past" him. Duncan also testified that after the driver hit the victims, the driver "hesitated a few seconds, looked, and took off." Harper's testimony corroborated Duncan's testimony and described the driver as a "light skin or a Puerto Rican [male] . . . with a thick mustache and straight hair" who was driving a "dark color" car. Both men testified that the driver's car would have suffered damage, if any, on the front passenger-side.

Police recovered Evelyn's sneakers, three blue "snap-on" barrettes, and three blue "twisty ball" barrettes from the north and south-bound lanes. Accident Investigation Division ("AID") Police Officer Franklin Steed ("Steed") testified that the distance between Evelyn's sneakers indicated that the car was moving faster than 35 miles per hour, and that Evelyn "was still on the vehicle after being contacted." Evelyn's sneakers also made a mark on the street indicating that she was dragged after the initial collision.

Shortly after midnight on May 9, 2004, the Police received information that a 1990 Oldsmobile Toronado ("Toronado") had been involved in a collision and had damage to its front passenger side, including a dislodged headlight, cracked headlight housing, a white "scuff mark" on the dented hood, and a damaged windshield. AID Police Officer Roosevelt Gibbs ("Gibbs") testified that he examined the car and found a blue ball in the area underneath the base of the windshield of the vehicle, that the airbag had been deployed, and that there was an open bottle of beer in the center console. Based upon his examination of dust on the surface of the car, Gibbs testified that the external damage occurred recently.

The police then traced possible ownership of the car to [Appellant,] who was contacted after midnight on May 9, 2004, at his home. When he opened the door to the police and was asked about the car, [Appellant] stated that he owned the Toronado and that he had been in an accident, that he had left the scene of the accident, and that he was drunk.

---

* Retired Senior Judge assigned to the Superior Court.

John Caranci ("Caranci"), [Appellant's] co-worker, testified that [Appellant] appeared intoxicated at 3:00 p.m. on May 8, 2004, the day of the accident. Caranci told [Appellant] to go home and believed [Appellant] did so but that he had returned at approximately 7:45 p.m. to pick up his paycheck. Caranci testified that [Appellant] did not appear intoxicated when he picked up his paycheck.

Lynda's grandmother, Evelyn Hernandez ("grandmother"), testified that Lynda frequently wore blue barrettes with blue balls in her hair to match her school uniform. The grandmother identified the blue ball found under the windshield of the defendant's Toronado as belonging to Lynda.

Dr. Richard Cohn ("Cohn"), the Laboratory Director at Drug Scan, a federally-certified laboratory, and a board-certified forensic toxicologist, testified that [Appellant's] blood alcohol content ("BAC") was above 0.08 percent at the time of the accident to a reasonable degree of scientific certainty based on the following: that [Appellant] had a .232 percent BAC level at 7:20 a.m. on May 9, 2004; testimony that [Appellant] continuously showed signs of intoxication from 4:00 p.m. on May 8, 2004, until 7:20 a.m. on May 9, 2004; and, the alcohol dissipation rate of [Appellant's] body during this time period.

Trial Court Opinion ("T.C.O."), 8/7/2012, at 2–5 (citations to notes of testimony omitted).

1. *See* 75 Pa.C.S. §§ 3802, 3735.1, 3735, 3742.1, 3742, 18 Pa.C.S. §§ 2701, 2504, 2705 (respectively).

2. Appellant's direct appeal and the Commonwealth's motion to dismiss both state that the aggregate sentence was eight and one-half to seventeen years. However, the quarter ses-

Appellant was tried by jury from October 31 to November 5, 2005, and found guilty of driving under the influence ("DUI"), aggravated assault by vehicle while DUI, homicide by vehicle while DUI, causing an accident while not properly licensed, failure to stop in the event of an accident, simple assault, involuntary manslaughter, and recklessly endangering another person ("REAP").[1] On January 12, 2006, Appellant was sentenced to five to ten years' incarceration for aggravated assault by vehicle; one to two years for REAP, to run concurrently; three and one half to seven years for homicide by vehicle while DUI, to run consecutively; and three and one half to seven years for failure to stop in the event of an accident, to run consecutively, for an aggregate sentence of twelve to twenty-four years' incarceration. As well, Appellant was assessed a $2,500 fine and $25,000 in restitution.[2]

On January 30, 2006, Appellant filed a direct appeal with this Court. On April 26, 2006, this Court dismissed Appellant's appeal for failure to file a docketing statement pursuant to Pa.R.A.P. 3517, and ordered Appellant's counsel to acknowledge this order by filing a certification within ten days. No certification was filed. On March 10, 2010, Appellant filed a *pro se* Post Conviction Relief Act ("PCRA")[3] petition claiming that his attorney abandoned him. On February 24, 2012, the trial court granted Appellant's petition, reinstated his right to appeal *nunc pro tunc*, and appointed new counsel. This appeal followed.[4]

Appellant raises the following issues:

sions file shows that the correct sentence is as detailed above. *See* T.C.O. at 1.

3. 42 Pa.C.S. §§ 9541–46.

4. On March 27, 2012, the trial court directed counsel to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). Appellant timely complied.

1. Whether the suppression court erred by failing to suppress Appellant's statements in response to incriminating police questions concerning Appellant's connection to the vehicle that the police already determined to be involved in the accident, but nonetheless questioned Appellant in the absence of any prior warnings, *see Miranda v. Arizona*, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), and in circumstances where Appellant was deemed by the court to be incoherent and incapable of understanding basic warnings issued by the police one hour later?

2. Whether the evidence was insufficient as a matter of law to sustain Appellant's convictions for DUI, homicide by vehicle while DUI, and aggravated assault by vehicle while DUI, where the Commonwealth: (a) failed to present adequate relation-back evidence pertinent to Appellant's BAC in light of the 11–hour delay; and (b) elicited testimony from its own witness that Appellant did not appear to be under the influence, nor smell of alcohol one hour prior to the unfortunate accident?

3. Whether the court below abused its discretion in denying Appellant's weight of the evidence claim by applying the wrong standard and failing to consider the weight of the evidence relating to Appellant's convictions for DUI, homicide by vehicle while DUI, [and] aggravated assault by vehicle while DUI, specifically where the Commonwealth: (a) submitted deficient, tenuous and incredible expert relation-back testimony concerning Appellant's BAC; (b) there was a break in [the] chain of custody with respect to Appellant's blood analysis; and (c) the Commonwealth's witness testified that Appellant neither appeared to be under the influence of alcohol, nor smelled of alcohol one hour prior to the unfortunate accident?

Brief for Appellant at 5.

■ In his first issue, Appellant asserts that his initial oral statements, which occurred moments after investigating officers knocked on his front door, should have been suppressed.[5] Appellant contends that his statements were elicited by coercive police questions, absent any prior *Miranda* warnings, at a time when he was incompetent due to intoxication.

Pursuant to our deferent standard of review of a trial court's suppression ruling, we must determine:

[W]hether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains

On August 7, 2012, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

5. The Commonwealth contends that Appellant's challenge to his suppression claim is waived because his pretrial motion and later *pro se* motion to suppress are not in the certified record. *See* Pa.R.A.P. 1921, note ("An appellate court may consider only the facts which have been duly certified in the record on appeal."); *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258, 264 (1974).

However, on October 26, 2005, the trial court addressed Appellant's suppression motion, and denied the motion as to Appellant's spontaneous utterances to the police at his home. *See* Notes of Testimony, 10/26/2005, at 2–4. A transcript of this hearing is in the certified record, and our review of the issue is not, therefore, hindered in any way. Consequently, we find that this issue has been preserved for our review.

uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*In re K.Q.M.*, 873 A.2d 752, 754 (Pa.Super.2005) (internal quotation marks and citation omitted).

Before trial, Appellant sought to suppress his oral statements as well as the incriminating written statement that police obtained from him fewer than two hours later at AID headquarters. On October 26, 2005, in open court, the trial court denied the suppression of his oral statements but granted the suppression of his written statement. The court found that Appellant made his oral statements spontaneously and not in response to coercive police questioning. However, regarding his written statement, the court found that Appellant was highly intoxicated and did not comprehend his *Miranda* rights at the time. Consequently, he could not intelligently and knowingly waive these rights. For these reasons, the trial court granted Appellant's suppression motion only as to the written statement. Notes of Testimony ("N.T."), 10/26/2005, at 2–4.

Appellant argues that, inasmuch as the trial court suppressed his written statement on the basis that he was incompetent to provide such statements at the time, it necessarily follows that he was unable to make knowing, voluntary oral statements one hour earlier, when ostensibly he was even more intoxicated. Brief for Appellant at 14. Appellant asserts that the "loaded incriminating questioning" by multiple police officers, who arrived at his door in uniform around 4:00 a.m., rendered the interaction a custodial interrogation for constitutional purposes. *Id.* at 13. Since he was not yet advised of his *Miranda*

rights and was in no condition to comprehend the significance of the police questioning, Appellant argues that his oral statements should not have been used against him as evidence. *Id.* at 13. The trial court disagreed, finding that Appellant's "[oral statements] were spontaneously made ... they were not made in response to police questioning." N.T., 10/26/2005, at 2.

 It is a fundamental precept enshrined in the United States Constitution that a suspect subject to a custodial interrogation by police must be warned that he has the right to remain silent, that anything he says may be used against him in court, and that he is entitled to the presence of an attorney. *Miranda*, 384 U.S. at 469, 86 S.Ct. 1602. If an individual is not advised of his *Miranda* rights prior to custodial interrogation by law enforcement officials, evidence obtained through the interrogation cannot be used against him. *K.Q.M.*, 873 A.2d at 755. "[I]n order to trigger the safeguards of *Miranda*, there must be both custody and interrogation. Statements not made in response to custodial interrogation are classified as gratuitous and are not subject to suppression for lack of *Miranda* warnings." *Commonwealth v. Heggins*, 809 A.2d 908, 914 (Pa.Super.2002).

 In deeming an interaction to be a custodial interrogation, "the police officer's subjective intent does not govern the determination but rather the reasonable belief of the individual being interrogated." *Commonwealth v. Zogby*, 455 Pa.Super. 621, 689 A.2d 280, 282 (1997). In *Zogby*, we affirmed the trial court's decision to suppress incriminating oral statements made by the appellee to a police officer, at the appellee's home, before *Miranda* rights had been administered. We agreed with the trial court that, under the circumstances, the situation equated to a custodi-

al interrogation. Appellant relies on *Zogby* to assert that the encounter at his home with the officers constituted a custodial interrogation.

An individual is deemed to be in custody for *Miranda* purposes when he "is physically denied ... his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *K.Q.M.*, 873 A.2d. at 755 (citing *Commonwealth v. Williams*, 539 Pa. 61, 650 A.2d 420, 427 (1994)). The court must consider the totality of circumstances, including factors such as "the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions." *Commonwealth v. Busch*, 713 A.2d 97, 101 (Pa.Super.1998).

In *Zogby*, a police officer went to the appellee's home around 4:00 a.m. and was let in by a roommate. The officer and roommate went into the appellee's bedroom to wake him. After much difficulty, the appellee awoke, whereupon the officer advised him to get dressed and come outside to talk. The appellee joined the officer, sitting outside on the curb, where the officer began to question him regarding the hit and run of a traffic sign. The men discussed the accident in detail, and the officer asked specific questions to which the appellee responded. The appellee indicated that no one else had been driving his vehicle that evening, and that he had nothing to eat or drink since he returned that evening. The appellee then consented to, and failed, a preliminary breath test, and the officer placed him under arrest. *Id.* at 281. This Court ruled, "We have little difficulty concluding that appellee

would reasonably feel that he had no choice but to get dressed, go outside and answer the officer's questions. Consequently, his freedom of action was restricted and he was in a custodial interrogation at the time he incriminated himself." *Id.* at 283.

The facts of the instant matter differ substantially from those of *Zogby*. Officer Steed knocked on Appellant's front door and waited outside for Appellant to answer. Remaining outside, Officer Steed briefly asked Appellant only two questions: one regarding his identity and one regarding vehicle ownership. Unlike in *Zogby*, where the arresting officer invaded appellee's private bedroom, advised him to come outside and talk, and asked specific questions regarding the accident, the circumstances surrounding Appellant's oral incrimination lack any indicia of restricting his freedom. Therefore, Appellant was not in custody for *Miranda* purposes at that time.

Although that is enough to reject Appellant's *Miranda* argument, we also note that Appellant was not interrogated. Interrogation is defined as "police conduct calculated to, expected to, or likely to evoke admission." *Heggins*, 809 A.2d at 914 (citations omitted). Officer Steed did not ask any specific questions relating to the accident or Appellant's involvement. The two questions he asked were general inquiries to determine Appellant's identity and his ownership of the suspect vehicle. Immediately after responding to these questions, without prompting, Appellant divulged the incriminating information. His statements were not in direct response to either question, and were made before Officer Steed had the chance to question Appellant further. This brief interaction between Appellant and the officers at his home does not equate to an interrogation. Consequently, Appellant's statements were

purely voluntary as he neither was in custody nor interrogated.

■ In the alternative, Appellant argues that his intoxication rendered his oral statements involuntary, an inference he argues necessarily follows from the trial court's suppression of his subsequent written statement, on precisely that basis. Brief for Appellant at 14. However, the Commonwealth contends that "whether [Appellant's] self-incriminatory declaration was the product of remorse, loosened inhibitions from drinking, or some other cause is legally irrelevant." Brief for the Commonwealth at 12 (citing *Commonwealth v. Johnson*, 615 Pa. 354, 42 A.3d 1017, 1028 (2012) (finding that appellant's claim that he was too distraught to understand his *Miranda* rights or intelligently waive them was "beside the point" because he was not in custody)).

Notably, this Court has entertained arguments on the voluntariness of statements where illness or intoxication is involved, even in the absence of custodial interrogation. In *Commonwealth v. Milligan*, 693 A.2d 1313 (Pa.Super.1997), the appellant sought to suppress an incriminating but undisputedly non-custodial confession on the basis that injury and intoxication rendered his admissions involuntary. We disagreed, reasoning as follows:

> The fact that an accused has been drinking does not automatically invalidate his subsequent incriminating statements. The test is whether he had sufficient mental capacity at the time of giving his statements to know what he was saying and to have voluntarily intended to say it. Recent imbibing or the existence of a hangover does not make his confession inadmissible, but only goes to the weight to be accorded to it.

*Id.* at 1316 (citations omitted). The determining factor is whether a confession "was the product of an essentially free and unconstrained choice." *Id.* While the appellant in *Milligan* appeared intoxicated, his thoughts were understandable and explicit. Moreover, he had only been talking to the police officer for a few minutes at the hospital when he incriminated himself. We affirmed the trial court's decision that the confession was voluntary, because the circumstances did not support the conclusion that the appellant was unable to exercise a reasoned choice.

Officer Steed testified that, when the officers went to Appellant's home, Appellant appeared somewhat intoxicated. N.T., 10/12/2005, at 14, 49. However, Appellant gave no indication that he was mentally incapable of understanding the situation or the questions asked of him. He responded quickly and appropriately, and volunteered additional information without further prompting. The trial court credited the officers' testimony that Appellant's behavior did not indicate mental incapacity or intoxication sufficient to render the statements involuntary at the time they were made. Moreover, the trial court concluded as a matter of fact that the brief interaction did not suggest psychological or physical coercion by the officers.

The evidence suggested otherwise with regard to what happened later, when Appellant was in custody. After Appellant was read his *Miranda* rights, he stated that he wished to remain silent. *Id.* at 41. Nonetheless, police officers continued to question Appellant and obtained an incriminating written statement. On the written statement, Appellant had crossed out questions, changed answers, and entered conflicting responses. *Id.* at 44–48. The trial court found that Appellant's unintelligible written statement indicated that he was confused and did not understand or knowingly waive his rights at that time. *Id.* at

4. While Appellant's intoxication played a prominent role in the trial court's ruling, this factor alone did not invalidate his written statement. In addition to Appellant's intoxication and blatant confusion, evidence tending to show coercion and the circumstances attending his written statement augmented the involuntariness of Appellant's written statement.

Even if Appellant was more intoxicated during the initial encounter with the officers at his home than at the time he putatively waived his right to remain silent, he was not subjected to police intimidation or coercion, and his statements were clear and comprehensible. While the court found that Appellant was too inco-. herent to knowingly and intelligently waive his *Miranda* rights and voluntarily confess while in custody, the evidence suggested that Appellant was competent to merely volunteer unsolicited information during the initial encounter with Officer Steed.

Appellant provides no authority to support his claim that we must of necessity extrapolate backward from his state of mind during custodial interrogation to establish his· state of mind one hour earlier. Nor does he provide support for the proposition that even an unintuitive pair of conclusions along these lines conclusively reflects an abuse of discretion. The record supports the trial court's factual findings, and the legal conclusions drawn therefrom are free from error. Faced with this evidence and this argument, we are not at liberty to disturb the trial court ruling.

Thus, we cannot conclude that Appellant's intoxication alone sufficed to render his unprovoked oral statements involuntary. Accordingly, we find that the trial court did not err or abuse its discretion in declining to suppress those statements.

■ Appellant next challenges the sufficiency of the evidence to sustain his convictions for DUI, homicide by vehicle while DUI, and aggravated assault by vehicle while DUI.

> [Our] standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, [were] sufficient to enable the fact finder to conclude that the Commonwealth· established all of the elements of .the offense beyond a reasonable doubt.

*Commonwealth v. Crabill,* 926 A.2d 488, 490 (Pa.Super.2007) (internal citations and· quotation marks omitted).

DUI is defined as follows:

> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

> (2) An individual may not drive, operate . or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a). To prove homicide by vehicle while DUI, the evidence must show that the accused unintentionally caused the death of another person as the result of driving in violation of section 3802. 75 Pa.C.S. § 3735. Additionally, to prove aggravated assault by vehicle while DUI, the evidence must demonstrate that the accused negligently caused serious bodily injury to another person as the

result of a section 3802 violation. 75 Pa. C.S. § 3735.1.

Appellant argues that the evidence was insufficient to establish that he was under the influence of alcohol while driving at the time of the accident, an element of each of the above offenses. Specifically, Appellant asserts that the Commonwealth failed to provide adequate relation-back evidence pertinent to Appellant's BAC, in light of the eleven hours that lapsed between the time of the accident and the taking of his blood. Brief for Appellant at 16, 18–19.

Appellant properly notes that a criminal conviction cannot be based upon mere speculation or conjecture. *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229, 1231 (1992). Emphasizing the eleven-hour time lapse between the accident and the blood test that determined his 0.232% BAC, Appellant asserts that the Commonwealth must provide sufficient relation-back evidence to demonstrate his intoxication at the time of the accident. Brief for Appellant at 17. Appellant argues that the Commonwealth's expert witness, Dr. Richard Cohn, offered only speculative and unscientific testimony relating his BAC to the time of the accident. Moreover, Appellant notes his co-worker's testimony that Appellant did not appear intoxicated shortly before the accident occurred at around 7:30 p.m. *Id.* at 17–18.

Appellant relies upon *Jarman, supra,* in which the appellant's BAC of 0.114%, as measured one hour after driving, was found to be insufficient to support a DUI conviction. Similarly, he relies upon *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992), in which the appellant's BAC of 0.108%, analyzed one hour and fifty minutes after driving, was deemed insufficient to prove beyond a reasonable doubt that he drove while his BAC was above the legal limit. Drawing from these cases, Appellant argues for the necessity of proper relation-back evidence to establish a DUI conviction when a significant time lapse separates the driving and the blood analysis. Brief for Appellant at 16–17. The time lapses at issue in both *Jarman* and *Modaffare* were fewer than two hours, a fraction of Appellant's eleven-hour delay.

These cases have been superseded by statute. *See Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162, 164 (1996) (noting that subsection (a)(5) "was enacted in response to this Court's decisions in [*Jarman* ] and [*Modaffare* ]"). Moreover, Appellant fails to account for more recent case law that distinguishes *Jarman* and *Modaffare*. Our General Assembly and the courts of this Commonwealth have taken up and modified this area of DUI law, particularly regarding the need for relation-back evidence. *Commonwealth v. Murray,* 749 A.2d 513, 517–19 (Pa.Super.2000). The former statute, 75 Pa.C.S. § 3731, was repealed in 2003 and was replaced by the materially similar 75 Pa.C.S. § 3802, which took effect on February 1, 2004. *See Commonwealth v. Kerry,* 906 A.2d 1237, 1241 (Pa.Super.2006). Appellant initially was charged under section 3731; however, the information was amended to a charge under section 3802.[6]

In *Jarman* and *Modaffare,* the appellants were convicted of violating section 3731. They challenged the sufficiency of the evidence. Each appellant argued that the test did not accurately reflect his BAC at the time he was driving due to the time lapse between arrest and blood testing. With the appellants' BACs only narrowly surpassing the legal limit over an hour later, expert testimony left open the possibility that their respective BACs may have been lower than the proscribed level at the

---

**6.** Appellant raises no issue concerning this amendment to this charge.

time of driving. We ruled in both cases that the BACs as tested were insufficient to sustain the convictions without further relation-back evidence. *Jarman, supra; Modaffare, supra.* However, neither holding **required** expert testimony to relate an accused's BAC to the time of driving. Rather, in the wake of *Jarman* and *Modaffare*, courts determined the need · for relation-back evidence on a case by case basis, which led to confusion and inconsistency. *Murray*, 749 A.2d at 518.

In response, the legislature enacted subsection 3731(a)(5) of the former DUI statute, permitting a conviction based upon BAC testing alone, provided that the testing was conducted within three hours of driving. *See* 75 Pa.C.S. § 3731(a)(5). However, our Supreme Court later ruled that subsection (a)(5) was unconstitutional for vagueness, overbreadth, and for creating an impermissible presumption of guilt. *Barud*, 681 A.2d at 163.

In 1996, the legislature again amended the statute to add subsection 3731(a.1), providing that a BAC above 0.10% at the time of testing was *prima facie* evidence of the BAC when driving, as long as testing occurred within three hours after the person drove. *Murray*, 749 A.2d at 518. The evidentiary inference based upon BAC results within a designated time block that subsection (a.1) permitted eliminated some confusion and inconsistency as to when relation-back evidence was needed. *Id.*

The amendments to section 3731 aimed to ameliorate prior difficulties with proving DUI by providing alternate ways of establishing the accused's BAC at the time of driving. However, the statute later was repealed and replaced with section 3802. The new statute represented "a wholesale re-drafting of the DUI law reflecting a re-definition of the offense," rather than a mere amendment of existing DUI law. *Commonwealth v. Duda*, 592 Pa. 164, 923 A.2d 1138, 1147 (2007). Consequently, Appellant's references to *Jarman* and *Modaffare* do not sustain his argument. Pennsylvania's DUI law presently does not require relation-back evidence as a matter of law, nor does it specify the manner by which the Commonwealth must prove that the accused operated a vehicle while having a BAC over 0.08%.

Dr. Cohn, an expert [7] in forensic toxicology, testified to a reasonable degree of scientific certainty that Appellant's BAC was at least 0.08% at the time of the accident. N.T., 11/2/2005, at 155–56. Dr. Cohn stated that, from the 7:20 a.m. reading of 0.232%, he could not calculate an exact BAC for Appellant at the time of the accident, because Appellant may have had more alcohol after the accident but before he was in custody.[8] However, Dr. Cohn took into account the rate of dissipation and the fact that Appellant showed signs of gross intoxication a few hours before the accident. In Dr. Cohn's expert opinion, Appellant's BAC was at least 0.08% at the time of driving. *Id.*

Appellant's claim that Dr. Cohn's testimony was speculative and unreliable goes to the weight rather than the sufficiency of the evidence. *Cf. In re Glosser Bros., Inc.*, 382 Pa.Super. 177, 555 A.2d 129, 133 (1989) (rejecting admissibility challenge to expert's testimony, because such issues were properly addressed to weight, rather than the admissibility). Appellant does not challenge the admissibility of Dr. Cohn's expert opinion, but rather its substance. Dr. Cohn's inability to render an exact

---

**7.** Dr. Cohn was accepted without objection as an expert in forensic toxicology. N.T., 11/02/2005, at 142.

**8.** Appellant does not argue that his elevated BAC resulted from drinking during this interim.

BAC at the time of the accident does not invalidate his testimony, regardless of whether it weakened that testimony. When reviewing a sufficiency claim, we may neither re-weigh the evidence nor substitute our own judgment for that of the fact-finder. *Commonwealth. v. Lewis,* 45 A.3d 405, 408 (Pa.Super.2012). We must consider all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth. *See Crabill, supra.* Moreover, the jury retains the responsibility of determining whether opinion evidence is relevant, and, if so, what weight to assign it. *Gunn v. Grossman,* 748 A.2d 1235, 1240 (Pa.Super.2000).

Dr. Cohn's testimony is not the only evidence of Appellant's DUI. Appellant admitted that he had an accident while drunk; police officers found an open bottle of beer in the car; Mr. Caranci testified that Appellant appeared intoxicated a few hours before the accident; and the police officers testified that Appellant appeared intoxicated and smelled of alcohol both at his home and at AID headquarters a few hours after the accident. Under the totality of these circumstances, the evidence presented sufficed to prove every element of DUI beyond a reasonable doubt. Moreover, because Appellant relies on this challenge alone to establish the insufficiency of the evidence to sustain his charges for homicide by vehicle while DUI and aggravated assault by vehicle while DUI, his challenges to those convictions also must fail.

Appellant also argues that the court abused its discretion by applying the wrong standard of review and failing to consider the weight of the evidence, specifically the Commonwealth's "deficient, tenuous, and incredible" expert relation-back testimony as well as an alleged break in the chain of custody with respect to his BAC analysis. However, Appellant failed to raise his weight claim in the trial court either before sentencing or in a post-sentence motion as required by Pa.R.Crim.P. 607. *See Commonwealth. v. Lewis,* 45 A.3d 405, 410 (Pa.Super.2012) (finding appellant's challenge waived for failure to raise it before the trial court); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Consequently, Appellant's final claim is waived.

Judgment of Sentence affirmed. Jurisdiction relinquished.