J-S23040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
PHILLIP DANIEL TOMSIC :
:
Appellant :
: No. 2061 EDA 2015

Appeal from the Judgment of Sentence October 10, 2013
in the Court of Common Pleas of Chester County Criminal Division
at No(s): CP-15-CR-0004357-2012

BEFORE: PANELLA, OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED April 21, 2016**.

Appellant, Phillip Daniel Tomsic, appeals from the judgment of sentence imposed in the Chester County Court of Common Pleas following his convictions for driving under the influence[1] ("DUI"), homicide by vehicle while DUI,[2] homicide by vehicle,[3] aggravated assault by vehicle while DUI,[4] involuntary manslaughter,[5] recklessly endangering another person,[6] and

---

[*] Former Justice specially assigned to the Superior Court.

[1]  75 Pa.C.S. § 3802(a)(1)-(2).

[2] 75 Pa.C.S. § 3735.

[3] 75 Pa.C.S. § 3732.

[4] 75 Pa.C.S. § 3735.1.

[5] 18 Pa.C.S. § 2504.

three traffic offenses.  Appellant challenges the sufficiency of the evidence supporting his convictions for DUI, homicide by vehicle while DUI, and aggravated assault by vehicle while DUI.  We affirm.

A non-jury trial was held on August 12, 13, and 22, 2013.  We summarize the relevant testimony as follows.  Ariel Steele testified that on the evening of November 4, 2011, she went to Anthony Washington and Kadeem Fulmore's suite on the campus of Lincoln University in Chester County at approximately 7:00 p.m., and each was drinking either gin or vodka mixed with juice.  N.T., 8/12/13 ("Vol. I"), at 21-23.  Appellant arrived around 7:30 p.m. with a red "Solo" cup from which he was drinking a purple "concoction" Steele assumed to be alcohol.  *Id.* at 24, 34.  Steele observed Appellant drink two more mixed drinks[7] in her presence from a tumbler glass "about the height of a twenty-ounce Solo" cup.  *Id.* at 25-26.  The cup was filled to the top each time.  *Id.* at 26.  Appellant was acting "silly" and "a little bit more playful" than Steele recalled him acting when he was not consuming alcohol.  *Id.* at 29-31.

Appellant volunteered to drive to a Chinese restaurant, approximately a ten-minute drive from campus, to pick up food for the group.  *Id.* at 27.

---

[6] 18 Pa.C.S. § 2705.

[7] Steele testified she could not recall which of the two liquors Appellant was drinking, but testified it was either gin or vodka.  N.T. Vol. I at 32.

Appellant left the suite and returned with keys, and he, Washington, and Fulmore left to pick up the food shortly after 8:00 p.m. *Id.* at 34.

At approximately 9:15 p.m. that evening, Corporal David Williams of the Lincoln University Police Department received a call from dispatch about a car accident. *Id.* at 78. He arrived at the scene and encountered "a vehicle imbedded into a tree, smoking on a hill, [at] about a forty-five degree angle." *Id.* at 79. Corporal Williams observed Washington, the front-seat passenger, halfway outside the vehicle, and discovered Washington did not have a pulse. *Id.* at 80-82. He could hear another voice screaming for help and observed Appellant in the driver's seat. *Id.* at 81, 83. The car caught fire, and Corporal Williams was unable to extinguish it. *Id.* at 85. He then observed Appellant climb over Washington to exit the car. *Id.* at 86. Appellant's waist and legs were on fire, and Corporal Williams and his partner pulled him from the vehicle and extinguished the flames with their hands. *Id.* The fire department responded and put out the vehicle fire, and the emergency responders pulled Fulmore out from the back of the car. *Id.* at 87-88. On cross-examination, Corporal Williams agreed with Appellant's counsel that the road where the accident occurred was "a dark, winding country-type of road" and conceded that he did not detect any indicia of intoxication from Appellant at the time. *Id.* at 92, 96. On redirect examination, he clarified that his focus at that point was safety,

and he was not attempting to assess Appellant's level of intoxication. *Id.* at 104.

At approximately 10:00 p.m. that evening, Trooper Jose Lebron of the Pennsylvania State Police responded to Crozer-Chester Medical Center, where Appellant and Fulmore were airlifted,[8] to investigate the accident. *Id.* at 107. Steele informed Trooper Lebron that Appellant and his friends had been drinking alcohol prior to driving. *Id.* at 109. At 12:15 a.m. on November 5, 2011,[9] Appellant's blood was drawn and provided to Trooper Lebron. *Id.* at 110-11. The parties stipulated that the blood was properly handled and analyzed "using standard, accurate and reliable methodology and testing equipment" and had a blood alcohol concentration ("BAC") of .089 percent. *Id.* at 197. The parties also stipulated that as a result of the accident, Washington died and Fulmore sustained a traumatic brain injury, amputations of the right leg below the knee and the left leg above the knee, complete loss of the use of his left hand and arm, among other injuries. *Id.* at 194-95.

Corporal Louis Robinson, of the Pennsylvania State Police, testified as an expert in accident reconstruction. He testified that the data from the air

___

[8] Washington was pronounced dead at the scene of the accident and was transported to a different location. *Id.* at 112.

[9] Trooper Lebron testified this was the first opportunity to draw blood from Appellant, as there had been a shooting that evening and the scene at the hospital was "hectic." *Id.* at 110-11.

bag control module revealed that "[t]he vehicle's peak speed five seconds before impact was eighty-seven miles an hour," and that speed was maintained for two seconds before the vehicle began decelerating. *Id.* at 149-50. He utilized two methods in determining the speed at which the vehicle struck the tree. *Id.* at 159. The speed was estimated at either 49.64 miles per hour or approximately fifty-two miles per hour. *Id.* at 159-60. The speed limit on that road was thirty-five miles per hour. *Id.* at 162. The Commonwealth asked for Corporal Robinson's opinion on the cause of the accident:

> Q. What is your opinion as to how this accident occurred and what factors, speed or any other input, you heard testimony about alcohol consumption, speed, driver's input. Taking all those things into consideration, what is your opinion as to how this accident occurred on this night?
>
> A. My opinion is that the operator of this vehicle, for reasons which have been demonstrated outside of my reconstruction, introduced excessive steering input to the vehicle, which is consistent with an intoxicated operator. There was no reasonable explanation as to why the vehicle was steered to the left after having successfully negotiated the curve [in the road], and that the vehicle was continuing to decelerate] to a speed which should have been manageable for it to continue its negotiation on the roadway. Also, the function that speed played in that crash is very simply that the amount of ground that was being traversed while the operator of this vehicle was attempting to operate it passed more quickly and that the collision was more catastrophic.

*Id.* at 158-59.

Dr. Richard Cohn testified on behalf of the Commonwealth as an expert in forensic toxicology.[10] Dr. Cohn performed a retrograde or "back" calculation to determine Appellant's BAC at the time of the crash. *Id.* at 204. He testified to a reasonable degree of scientific certainty "that at or around the time of the incident, [Appellant's] circulating blood alcohol concentration was 0.12 percent." *Id.* at 207; *see also id.* at 213, 218. He further opined as to the effect of that level of alcohol on a person's cognition:

> Certainly every individual at and above the .08 percent has measurable impairment. You couple that with the fact that this is a .089 to .12 percent [BAC], then **it's an absolute scientific certainty that this individual was unfit to perform a safety sensitive task.** A person doesn't have to be falling over drunk, sitting on the sidewalk slumped over to be impaired to perform driving tasks. Just because somebody may not have exhibited outward signs that a layperson would have recognized doesn't mean he's not impaired.

*Id.* at 214 (emphasis added).

Dr. Cohn opined specifically regarding Appellant's BAC in relation to the car accident, based on his review of all the reports of the accident, witness statements, and independent calculations:

> Considering all those facets that [the Commonwealth] indicated, it's my expert forensic toxicological opinion that alcohol was at least

---

[10] Dr. Cohn testified Drugscan, Inc., his employer, is a Commonwealth certified and federally certified toxicology laboratory. *Id.* at 198.

> causally related to the accident. And in the absence of any demonstrable documentation as to roadway conditions or other vehicle problems associated with this event, then that alcohol was directly causally related to the accident. That concentration of alcohol is impairing. And together with the chronology of events, the actions that were attributed to this individual prior to the driving of the vehicle and the concentration of alcohol found about two hours and forty minutes or so following the incident, following the collision, then this is an alcohol-related incident, at least, and could be totally related to the alcohol.

*Id.* at 222.

Dr. Lawrence J. Guzzardi testified on Appellant's behalf as an expert in medical toxicology and emergency medicine. In his opinion, Appellant's BAC at the time of the accident is indeterminable. N.T., 8/13/13 ("Vol. II"), at 273. He agreed with Dr. Cohn's calculation of Appellant's BAC assuming there was little or no alcohol absorbed subsequent to the accident, but he disagreed that the assumption was warranted in this case. *Id.* He summarized his disagreement with Dr. Cohn's analysis: "In short, you need to know the time of the drinking relative to the time of the incident before you can estimate, before you can do reliable extrapolation testimony." *Id.* at 275.

Corporal Robinson was called as a witness for Appellant and testified he could not say if there were any distractions just before Appellant crashed or whether or not Appellant was using a cell phone. N.T., 8/22/15 ("Vol.

III"), at 317-18. Following, Corporal Robinson's testimony, the defense rested.

On August 28, 2013, the trial court convicted Appellant of the aforementioned crimes. On October 10, 2013, the trial court sentenced Appellant to an aggregate term of five to ten years' imprisonment plus fines. Appellant did not file post-sentence motions or a timely direct appeal.

On November 10, 2014, Appellant filed a timely, *pro se* petition pursuant to the Post Conviction Relief Act[11] ("PCRA"). Counsel was appointed and filed an amended petition seeking reinstatement of Appellant's direct appeal rights *nunc pro tunc*, based on prior counsel's failure to file a requested direct appeal. On June 10, 2015, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*. Appellant filed a notice of appeal on July 8, 2015 and a court-ordered Pa.R.A.P. 1925(b) statement on July 31, 2015. The trial court filed a responsive opinion.

Appellant raises the following claims of error:

> I. The trial court erred in finding sufficient evidence for a conviction on the charge of [DUI] of Alcohol pursuant to 75 Pa.C.S.[] § 3802(a)(1) and 75 Pa.C.S.[] § 3802(a)(2).

---

[11] 42 Pa.C.S §§ 9541-9546.

We note the 30th day from Appellant's judgment of sentence was Saturday, November 9, 2013, and the Court was closed on Monday, November 11, 2013 in observation of Veterans Day. Therefore, Appellant's judgment of sentence became final on November 12, 2013. **See** 42 Pa.C.S. § 9545(b)(3); 1 Pa.C.S. § 1908; Pa.R.A.P. 903.

II. The trial court erred in finding sufficient evidence for convictions, specifically in terms of causation, on the charges of Homicide by Vehicle While [DUI] pursuant to 75 Pa.C.S.[] § 3735 and Aggravated Assault by Vehicle While [DUI] pursuant to 75 Pa.C.S.[] § 3735.1.

Appellant's Brief at 18.[12]

Appellant first challenges his convictions for DUI. Specifically, Appellant contends Dr. Cohn's "unproven assumptions," on which he premised his expert opinion, render the evidence insufficient to prove Appellant committed DUI. *See id.* at 25-34. For Appellant's second issue, he "concedes that he unintentionally caused the death of Anthony Washington and that he negligently caused serious bodily injury to Kadeem Fulmore." *Id.* at 19. However, he argues the Commonwealth failed to sufficiently prove that Appellant's violation of Section 3802 was the cause of Washington's death and Fulmore's injuries. *See id.* at 19-25. He argues the trial testimony indicated that the cause of the accident "could very rationally be road conditions, driver inexperience and speed[,]" and he challenges the expert opinion of Dr. Cohn. *Id.* at 20-25. For the following reasons, we hold Appellant is not entitled to relief.

Our standard of review is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial [] in the light most favorable to the

---

[12] We have reordered Appellant's issues for ease of discussion.

verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Talbert*, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted). We further consider all reasonable inferences derived from the evidence in the light most favorable to the Commonwealth. *Commonwealth v. Cruz*, 71 A.3d 998, 1009 (Pa. Super.), *appeal denied*, 81 A.3d 75 (Pa. 2013). The fact-finder determines the relevancy and weight to assign to expert testimony. *Id.* Moreover, sufficiency of evidence analyses do not require a reviewing court to ask whether it believes the evidence; rather, we determine whether the evidence presented, if believed by the fact-finder, was sufficient to support the verdict. *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1235-36 (Pa. 2007).

The trial court convicted Appellant of DUI under Subsections 3802(a)(1) and (2), which provide:

**(a) General impairment.—**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1)-(2).

Homicide by vehicle while DUI is codified, in relevant part, as follows:

**(a) Offense defined.—**Any person who unintentionally causes the death of another person as the result of a violation of section 3802 (relating to driving under the influence of alcohol or controlled substance) and who is convicted of violating section 3802 is guilty of a felony of the second degree when the violation is the cause of death . . . .

*Id.* § 3735(a).

Finally, aggravated assault by vehicle while DUI provides:

**(a) Offense defined.—**Any person who negligently causes serious bodily injury to another person as the result of a violation of Section 3802 . . . and who is convicted of violating section 3802 commits a felony

> of the second degree when the violation is the cause
> of the injury.

*Id.* § 3735.1(a).

Instantly, the Commonwealth presented the testimony of Ariel Steele who personally observed Appellant drinking liquor mixed with soft drinks beginning approximately one-half hour before Appellant left campus to pick up food. N.T. Vol. I at 25-26, 34. It is undisputed that Appellant was the driver of the vehicle and that the one-vehicle crash into a tree resulted in Washington's death and Fulmore's serious bodily injury. *Id.* at 194-95. It is further undisputed that when Appellant's blood was drawn, approximately three hours after Corporal Williams received a dispatch about the accident, Appellant had a BAC of .089 percent. *Id.* at 197. Corporal Roinson opined that "there was no reasonable explanation as to why the vehicle was steered to the left" after it had successfully maneuvered a curve in the roadway, and the operation of the vehicle was consistent with an intoxicated driver. *Id.* at 158-59. Dr. Cohn testified to a reasonable degree of medical certainty that Appellant's BAC was .12 percent at the time of the incident and alcohol was a causal factor in the crash. *Id.* at 207, 222. He further opined, to "an absolute scientific certainty," that a person with a BAC between .089 percent and .12 percent is "unfit to perform a safety sensitive task." *Id.* at 214. Appellant's attempts to discredit Dr. Cohn's opinion challenge the weight of that evidence not its sufficiency. *See Cruz*, 71 A.3d at 1008. We further note, "Pennsylvania's DUI law does not require relation-back evidence as a

matter of law, nor does it specify the manner by which the Commonwealth must prove that the accused operated a vehicle while having a BAC over 0.08%." *Id.*

Viewing all the evidence in the light most favorable to the Commonwealth, we conclude there was sufficient evidence to prove Appellant operated a vehicle after imbibing a sufficient amount of alcohol to render him incapable of safely operating the vehicle and that his BAC was at least .08 percent within two hours of his operation of the vehicle. **See** 75 Pa.C.S. § 3802(a)(1), (2); *Talbert*, 129 A.3d at 542. The trial court was free to assess and weight the expert testimony of Corporal Robinson and Dr. Cohn and conclude Appellant was impaired when operating his vehicle. **See** *Talbert*, 129 A.3d at 543; *Cruz*, 71 A.3d at 1009. Moreover, viewing all the evidence and reasonable inferences derived therefrom in the light most favorable to the Commonwealth, we conclude there was sufficient evidence to prove Appellant's violation of Section 3802 was the cause of Washington's death and Fulmore's serious bodily injury. **See** 75 Pa.C.S. § 3735; *id.* § 3735.1; *Talbert*, 129 A.3d at 543; *Cruz*, 71 A.3d at 1009. While Appellant suggests driver inexperience, speed, or road conditions "could" have caused the accident, it was the within the purview of the trial court to resolve any doubts as to Appellant's guilt. **See *Talbert***, 129 A.2d at 543. Accordingly, we affirm.

Judgment of sentence affirmed.

J-S23040-16

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2016

- 14 -