J-S07043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| WILLIAM AMOS CRAMER, | : | |
| | : | |
| Appellant | : | No. 942 MDA 2016 |

Appeal from the Judgment of Sentence January 25, 2016
in the Court of Common Pleas of Northumberland County,
Criminal Division, No(s): CP-49-CR-0000530-2015

BEFORE: BOWES, LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MARCH 28, 2017**

William Amos Cramer ("Cramer") appeals from the judgment of sentence imposed after a jury found him guilty of four counts of aggravated assault and one count each of assault by life prisoner, attempted murder, possession of an instrument of crime, and prohibited offensive weapons.[1] We affirm.

On August 31, 2014, Cramer was an inmate at the State Correctional Institution at Coal Township ("SCI-Coal"), serving a life sentence for first-degree murder. The victim, Francisco Charriez ("Charriez"), was a corrections officer at SCI-Coal. The trial court set forth the relevant facts as follows:

> [On August 31, 2014, Charriez] was on duty in the [SCI-Coal] yard[,] instructing inmates to return to their units. [Charriez] described how [Cramer] snuck up behind him and applied a

---

[1] **See** 18 Pa.C.S.A. §§ 2702(a)(1), (a)(2), (a)(3), (a)(4); 2704; 901(a); 907(a); 908(a).

choke hold. Yelling "die nigger," [Cramer] started to cut [Charriez's] throat with a razor; punched his face near the right temple; … gouged him with the razor near his right eyelid; [and] then [] walked away laughing and chanting something. Fortunately, [Charriez] was successfully treated for his life threatening wounds, and survived the attack; however, now he suffers from post-traumatic stress disorder.

[Charriez], Puerto Rican by descent, denied any provocation whatsoever. [Charriez stated that Cramer] wasn't an inmate in [Charriez's] unit, and [Charriez] had never even spoken to [Cramer] at any time.

Another correctional officer related that he was about ten to fifteen yards away when he noticed [Charriez and Cramer] "square off." [This correctional officer stated that a]lthough [he was] focused on assisting with getting [Cramer] restrained [following the attack], he saw [Cramer] throw a white object away, which was [] never found.

Trial Court Opinion, 10/12/16, at 2-3 (unnumbered).

After Cramer was placed in custody, prison authorities transported him to the State Correctional Institution at Dallas, where he was interviewed by Pennsylvania State Trooper Charles Prula ("Trooper Prula"). According to Trooper Prula, Cramer had stated that the confrontation began when Cramer accidentally bumped into Charriez, at which time Charriez noticed that Cramer had a tattoo of a swastika and asked Cramer if he was a white supremacist. N.T., 11/19/15, at 104-05. Cramer replied that he was, in response to which, Cramer alleged, Charriez called Cramer a "cracker," which is commonly known as a derogatory reference. *Id.* at 105. Trooper Prula described what next transpired as follows:

Cramer told me at that point, he decided to lay [in] wait for [Charriez]. [Cramer] indicated that everything was

premeditated and that he did try to kill [Charriez]. [] Cramer told me that he walked around the [SCI-Coal] track until he was able to come up behind [Charriez] and then [Cramer] used his hand and his forearm, placed it over [Charriez's] forehead, pulled his neck back[,] and then tried to cut his throat. After that, [] Cramer stated that he threw the weapon onto the basketball court. He described it … as a razor with a handle.

*Id.* (paragraph break omitted); *see also id.* at 107 (wherein Trooper Prula reported that Cramer had stated to him, "I tried to slice [Charriez's] throat with the razor, I tried to kill him.").

Cramer testified in his own defense at trial, and stated that he was passing out "pro-white" literature when he bumped into Charriez. *Id.* at 117. Cramer stated that after engaging in a verbal altercation with Charriez, Cramer went to Charriez's supervisor to complain about Charriez. *Id.* Cramer then returned to Charriez and asked Charriez to leave him alone, at which time Charriez called Cramer a "cracker" and threw Cramer's literature on the ground. *Id.* Cramer testified that in response to

some things [said by Charriez,] I felt that I had to defend myself. … My life was in jeopardy in a prison society like this[,] and [Charriez] was just releasing information and, you know, putting my history out there and that was endangering my life, so I acted. Did I intend to kill him? No, that wasn't true. Did I say it? I did. I was angry. People say things when they get mad. I didn't mean it.

*Id.* at 118 (paragraph break omitted).

On January 8, 2015, a Police Criminal Complaint (hereinafter "the Complaint") was filed charging Cramer with six counts: one count each of assault by life prisoner, attempted murder, possession of an instrument of

crime, and prohibited offensive weapons; and two counts of aggravated assault (under 18 Pa.C.S.A. § 2702(a)(3) (concerning aggravated assault – bodily injury – of a correctional officer in the performance of duty) and 2702(a)(4) (concerning aggravated assault with a deadly weapon)). On June 8, 2015, the Commonwealth filed a Criminal Information (hereinafter "the Information") against Cramer, charging him with the above-mentioned offenses, as well as two additional aggravated assault charges (hereinafter collectively referred to as "the additional aggravated assault charges"), under 18 Pa.C.S.A. § 2702(a)(1) (concerning aggravated assault – serious bodily injury) and 2702(a)(2) (concerning aggravated assault – serious bodily injury – of a correctional officer in the performance of duty). The matter proceeded to a jury trial,[2] at the close of which the jury found Cramer guilty of all eight counts charged in the Information.

On January 25, 2016, the trial court sentenced Cramer to an aggregate term of twenty to forty years in prison, to run consecutively to his underlying life sentence. Cramer thereafter filed a timely post-sentence Motion, which the trial court denied. Cramer filed a timely Notice of Appeal,

---

[2] At the close of the Commonwealth's case-in-chief, Cramer's standby counsel objected at sidebar, alleging lack of adequate notice of the additional aggravated assault charges contained in the Information. N.T., 11/19/15, at 147-48. The trial court overruled the objection. *Id.* at 149.

- 4 -

along with a Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.[3]

Cramer now presents the following issues for our review:

A. Whether the [trial] court erred by allowing the prosecutor to file [the I]nformation with two added counts[,] without serving [Cramer] or his counsel[,] when every defendant has a right to due process and equal protection under the law?

B. Whether the [trial] court erred in finding sufficient evidence where there was no video confirmation of the alleged assault and the alleged victim's testimony changed at trial from his prior versions[;] no experts were called to support lay opinions[;] and the prosecutor failed to prove beyond a reasonable doubt the specific intent required?

Brief for Appellant at 5 (capitalization omitted).

Cramer first argues that he was denied due process of law when the Commonwealth purportedly added the additional aggravated assault charges at trial, without notice to Cramer. *Id.* at 14; *see also id.* at 17-18 (asserting that "[t]he verdict slip added the [additional aggravated assault] charge[s] over objection of [Cramer]"). Accordingly, Cramer urges, he is "entitled to a new trial, since the [additional aggravated assault] charges clouded the entire defense presented by [Cramer], and he was not adequately able to prepare prior to trial [concerning] all [of] the charges lodged against him." *Id.* at 18. We disagree.

Contrary to Cramer's assertion, the additional aggravated assault charges were not added at trial; rather, they were included in the

---

[3] The trial court did not order Cramer to file a Rule 1925(b) concise statement.

Information.  Moreover, Cramer concedes that the Commonwealth filed the Information with the Prothonotary in June 2015, five months prior to trial, but failed to serve him with a copy.  Brief for Appellant at 15.  Pennsylvania Rule of Criminal Procedure 562 provides that "[t]he clerk of courts shall, **upon request**, furnish each defendant against whom an information or informations have been filed[,] with a copy of the information or informations filed against the defendant."  Pa.R.Crim.P. 562 (emphasis added).  Cramer has not alleged that he ever requested a copy of the Information.  Additionally, it is of no moment that the Complaint charged Cramer with only, *inter alia*, two counts of aggravated assault.  The additional aggravated assault charges were contained in the Information, which was the charging document.[4]  Accordingly, Cramer's first issue lacks merit.

Next, Cramer asserts that the jury's verdicts were not supported by

_____

[4] In any event, Cramer was put on adequate notice of the additional aggravated assault charges by virtue of the other six charges set forth in the Complaint (and bound over at his preliminary hearing).

- 6 -

sufficient evidence and must therefore be overturned.[5] **See** Brief for Appellant at 18-26. Specifically, Cramer summarizes his claim as follows:

> The verdict went against the sufficiency of the evidence where [Cramer] claimed he had no intent to kill [Charriez;] where there was no video confirmation that [Cramer's] original intention was to create any bodily injury[;] where [Charriez] was taken by surprise and unable to definitively surmise [Cramer's] original intention[;] where [Cramer] claimed he was trying to protect his religion, his life, and his beliefs[;] where the fight and injuries escalated thereafter[;] and where no weapon was found.

**Id.** at 18-19; **see also id.** at 23 (maintaining that "[Charriez] likely threatened or provoked [Cramer,] undermining the support for a guilty verdict."). Cramer further asserts that "[Charriez's] injuries were not likely life threatening[,] and since no expert testified … that the injuries were such, the element of injury[,] and specifically[,] 'serious bodily injury[,]' was not proven at trial beyond a reasonable doubt. [Charriez] had four small gashes." **Id.** at 22. Additionally, though Cramer concedes that he had

---

[5] We observe that Cramer does not specify which of his eight convictions he is challenging as being unsupported by sufficient evidence. Though we decline to find waiver of Cramer's claim on this basis (particularly where the trial court did not order a Rule 1925(b) concise statement), this defect hinders our review of Cramer's claim. **Accord Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009) (holding that the defendant had waived his sufficiency of the evidence challenge where he did not, in his *court-ordered* Rule 1925(b) concise statement, specify the convictions he was challenging and/or the element or elements upon which the evidence was purportedly insufficient, and the defendant's appellate brief was similarly undeveloped). Moreover, in lieu of reciting herein the Crimes Code definitions of the several crimes of which Cramer was convicted, we simply refer to the applicable provisions. **See** 18 Pa.C.S.A. §§ 2702(a)(1)-(4); 2704; 901(a); 907(a); 908(a).

admitted to Trooper Prula that he cut Charriez with a razor with the intent to kill him, Cramer recanted this admission at trial. *Id.* at 21-22, 24.

Our standard of review of a sufficiency of the evidence claim is well settled:

> Our standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to enable the fact[-]finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.

*Commonwealth v. Cruz*, 71 A.3d 998, 1006 (Pa. Super. 2013) (citation and brackets omitted).

> In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. … Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Gibbs*, 981 A.2d at 281 (citation omitted). Finally, "the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Melvin*, 103 A.3d 1, 40 (Pa. Super. 2014) (citation omitted).

Initially, to the extent that Cramer challenges that the jury should have believed his account of the events of August 31, 2014, and disbelieved the account of Charriez, this claim goes to the weight of the evidence, not the sufficiency of the evidence. *See Commonwealth v. W.H.M.*, 932 A.2d 155, 160 (Pa. Super. 2007) (stating that a claim that the jury should have believed appellant's version of the event rather than that of the victim goes to the weight, not the sufficiency of the evidence). Here, the jury, as fact-finder, was free to believe all, part, or none of the testimony presented, and credibility determinations are solely within its province. *See Commonwealth v. Rabold*, 920 A.2d 857, 860 (Pa. Super. 2007). Further, to the extent that there were conflicts in the testimony, the jury ostensibly accepted the testimony proffered by the Commonwealth's witnesses, and found Cramer's account of the assault to be incredible, and his justifications for his actions unavailing. *See id.* We decline Cramer's invitation to assume the role of the fact-finder, and to reweigh the evidence on appeal and disturb the jury's credibility determinations. *See id*.

Moreover, it must be emphasized that Cramer confessed to Trooper Prula that Cramer had used a razor to cut Charriez, with the intent to kill him. N.T., 11/19/15, at 105, 107. Though Cramer recanted his confession at trial, the jury, acting within its sole province, ostensibly disbelieved Cramer's self-interested recantation and determined that he, in fact, possessed the intent to kill Charriez. Cramer's admission as to his intent

undermines his claim on appeal that there was insufficient evidence of his intent (*i.e.*, from video surveillance or Charriez's testimony). Moreover, even though the weapon that Cramer had used was never recovered, Cramer's admission that he had used a razor (along with Charriez's injuries and an eyewitness's testimony that he saw Cramer discard an object immediately after the attack) was amply sufficient to establish that Cramer possessed and used a prohibited weapon. We conclude that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to establish all elements of the offenses of which Cramer was convicted beyond a reasonable doubt. *See*, *e.g.*, *Commonwealth v. Dale*, 836 A.2d 150, 152, 154-55 (Pa. Super. 2003) (upholding the defendant's convictions of attempted murder and multiple counts of aggravated assault where the defendant, an inmate in state prison, tried to kill another inmate in the prison yard by cutting his throat with a razor, and rejecting the defendant's sufficiency challenge as to the requisite specific intent and severity of the victim's wounds). Accordingly, Cramer's second issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2017

- 10 -