J-S48008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM D. MCGREW | : | |
| | : | |
| Appellant | : | No. 12 MDA 2017 |

Appeal from the Judgment of Sentence November 29, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0007243-2015

BEFORE:   OTT, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 20, 2018**

William D. McGrew appeals from the judgment of sentence entered on

November 29, 2016, in the York County Court of Common Pleas.   On

September 13, 2016, a jury convicted McGrew of robbery, theft by unlawful

taking, and receiving stolen property ("RSP").[1]  The court sentenced McGrew

to an aggregate term of six and one-half to 13 years' incarceration.  On appeal,

McGrew raises sufficiency of evidence, admissibility of certain evidence, and

legality of sentence claims.  After a thorough review of the submissions by the

parties, the certified record, and relevant law, we affirm McGrew's convictions.

However, as indicated and acknowledged by the trial court, it imposed an

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S. §§ 3701(a)(1)(ii), 3921(a), and 3925(a), respectively.

illegal sentence as to the theft crime, and therefore, we vacate the judgment of sentence on the theft by unlawful taking conviction.

The facts and procedural history are as follows: Niraj and Mina Ramani[2] ("Husband" and "Wife", respectively), co-owners of King Tobacco Express at 49 Market Street, York City, Pennsylvania, were working at their store on January 13, 2016, when a male individual rushed in, wearing a blue hooded jacket/sweatshirt,[3] a hat, and a mask covering his face.[4] N.T., 9/12/2016 – 9/13/2016, at 67, 72, 75.

The perpetrator, subsequently identified as McGrew, shouted at Wife to give him the money, while he had a knife with a 4-to-5 inch blade[5] in his hand. *Id.* at 68, 88. McGrew then pointed the knife towards Husband several times. *Id.* at 68, 76. Husband opened the register and McGrew put his hand inside,

---

[2] At McGrew's trial, both Husband and Wife testified *via* an interpreter because they have difficulty with the English language. **See** N.T., 9/12/2016 – 9/13/2016, at 66, 70, 74. Police Officer Michael Davis indicated that because of the language barrier, he had some difficulty understanding the victims. **Id.** at 163.

[3] A store customer, Roy Stottlemeyer, also testified the perpetrator was wearing a blue-hooded sweatshirt. **Id.** at 98.

[4] Wife and Husband both testified they could not see the face of the suspect at the time. **Id.** at 71, 81. Officer Davis indicated he may have misinterpreted, but thought Husband told him the perpetrator was a "light-skinned black male." **Id.** at 164.

[5] The knife was never recovered. **Id.** at 120.

pulled out money, and then fled the scene.[6] *Id.* at 69, 75. Husband followed McGrew outside the store from Market Street to Beaver Street where there was an alley, but then returned and called the police. *Id.* at 76-77.

After the police arrived, Husband accompanied them in the direction of where McGrew fled and the officers found a discarded baby-blue sweatshirt and Baltimore Orioles baseball hat on the ground. *Id.* at 80. Husband told Officer Davis the robber wore the discarded items. *Id.* at 175. A video from a nearby store's surveillance camera was played at trial that depicted a man wearing a baby blue sweatshirt walking on the same side of Market Street as the convenience store around the time the crime took place. *Id.* at 105.

Husband mentioned to police "[t]here was another incident which happened a few days before, three or four days before this incident, that a person came to the store, and he tried to run various credit cards on the machine to purchase something[.]"[7] *Id.* at 81. Husband believed "it might be the same person[.]" *Id.* He provided police with credit card transaction history information,[8] and also gave them a blue Aldi grocery plastic bag that was carried by the suspect to police. *Id.* at 87, 120.

---

[6] It was stipulated at trial that $1,350.00 was taken from the convenience store's register. *Id.* at 230.

[7] Husband also noted, "It appeared that the card carried a woman's name." *Id.* at 83.

[8] Husband actually provided the officers with credit card information from November of 2015, and not January of 2016. *Id.* at 115-116.

Detective Paul DeHart traced the credit card information to a woman named Marilyn Doll, who was living in Maryland. *Id.* at 107-108. In attempting to contact her, Detective DeHart spoke with Glenn Doll, Marilyn's son, who told the detective "that his mother is elderly and he does have a sister by the name of Laura Strausbaugh who lives in York." *Id.* at 108. Detective DeHart then contacted Strausbaugh and "she stated that she did have a boyfriend in the York area, and she gave the name William McGrew, the same date of birth as Mr. McGrew." *Id.* at 108-109. Detective DeHart learned McGrew used the same address as Strausbaugh, 300 Roosevelt Avenue. *Id.* at 109. Detective DeHart indicated the perpetrator fled in the direction of 300 Roosevelt Avenue. *Id.* at 112-113. The detective also "had previous knowledge that Mr. McGrew was from the Baltimore, Maryland, area, and being that the hat [found at the scene] was a Baltimore hat for a sports team, when I went to speak to [McGrew] in his apartment, he was also wearing a Baltimore sports T-shirt." *Id.* at 112. The detective made contact with McGrew at the 300 Roosevelt Avenue residence and requested an updated DNA sample. *Id.* at 111. McGrew complied with the request at subsequent date. *Id.*

Jillian M. Crouch, a DNA forensic science expert with the Pennsylvania State Police, testified to the DNA results from McGrew's sample, the sweatshirt, and the Orioles hat. She indicated there was a "full DNA profile" from McGrew on the sweatshirt and hat. *Id.* at 150-151. She also testified

other people's DNA was present was on the items but McGrew's was the only "full profile." *Id.* at 152.[9] Crouch explained the significance:

> The fact that th[e] profile is found as the major means that that person potentially wore that article of clothing more than the other two or other DNA profiles that were found or that person either, you know, was perspiring more than someone else or they were shedding more skin cells than someone else.
>
> …
>
> If someone were wearing that item, you would expect to get a full profile, if they were wearing it for an extended period of time. If you're just putting it on for a second, you're not going to be depositing that much DNA on that piece of clothing.

*Id.* at 157, 159.

McGrew testified that he lived at 300 Roosevelt Avenue with his fiancée, Strausbaugh. *Id.* at 184. He indicated he has a prior criminal record, including multiple theft convictions. *Id.* at 185-186. He stated he had a prescription drug problem and at the end of November of 2015, he decided to enter a rehabilitation facility until January of 2016. *Id.* at 188. McGrew testified he would let various people live in the home he shared with Strausbaugh for a certain fee.[10] *Id.* at 189-190. When asked about the clothing found by police, McGrew stated they were both his, but the last time

---

[9] Specifically, a mixture of three individuals' DNA were detected on the sweatshirt and two peoples' DNA on the hat. *Id.* at 155-156.

[10] On cross-examination, McGrew could not identify any of these "tenants" by name. *Id.* at 201.

he saw them was before he entered rehab. *Id.* at 192. He also said Strausbaugh had "bagged up the majority of [his clothing] that [he] didn't take to rehab, and at that time [he] didn't know what happened" but later found at she had taken his clothing to a thrift store.[11] *Id.* at 195, 218-219.

McGrew denied having any involvement in the robbery of the convenience store on January 13, 2016. *Id.* at 197. He also denied using Strausbaugh's mother's credit card. *Id.* at 199. McGrew testified he had been to the convenience store several times, and Strausbaugh may have used her mother's credit card but he "rarely paid attention to it[.]"[12] *Id.*

Lastly, Strausbaugh testified, confirming she gave away McGrew's clothing in December of 2015 but could not name specific items, and that her mother is Doll and she had her mother's credit card in her possession. *Id.* at 218-220. She could not recall a time prior to April of 2015 when her mother visited her in York. *Id.* at 222-223. She also indicated she shopped at Aldi's grocery store and had several blue plastic bags at her residence. *Id.* at 228-229.

McGrew was arrested and charged with numerous crimes related to the robbery. A two-day jury trial began on September 12, 2016. The next day,

---

[11] Additionally, he said his residence was burglarized in the beginning of November 2015. *Id.* at 204.

[12] The credit card records did not indicate any "transactions" were made by Doll in December of 2015. *Id.* at 208.

the jury found McGrew guilty of robbery, theft by unlawful taking, and RSP.[13]

On November 29, 2016, the court sentenced McGrew to a term of six and one-half to 13 years' incarceration for the robbery count, and a concurrent term of one to two years' imprisonment for the theft count.[14]  McGrew did not file post-sentence motions, but did file this timely appeal.[15]

In McGrew's first argument, he claims there was insufficient evidence to convict him of robbery.  **See** McGrew's Brief at 17.  Specifically, he states the only evidence that connected him to the crime was the following: (1) the DNA evidence found on the robber's clothing; and (2) the use of a credit card at the store months beforehand.  **Id.**  With respect to the DNA evidence, McGrew asserts:

> [There] is very much doubt because there were multiple contributors to the clothing that was recovered.  Indeed, even the Commonwealth's expert admitted the sweatshirt contained the DNA profiles of two other people while the hat contained the profile of one other person.  These people remained completely unknown at the time of trial, and there was no indication that the police excluded them as suspects.
>
> It is true that McGrew left a full profile on the clothing and the other contributors did not.  This meant he "potentially" wore

---

[13]  The jury acquitted McGrew of simple assault.

[14]  The RSP count merged with the theft offense for sentencing purposes.

[15]  On December 30, 2016, the trial court ordered McGrew to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Following an extension of time, McGrew filed a concise statement on February 10, 2017.  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on March 13, 2017.

the clothing more than the others, or possibly left more DNA by sweating more or shedding more skin cells. But the expert admitted it was impossible to determine when the contributors' DNA was left on the clothing, or how long they had worn the clothing. It was therefore entirely possible that one of the minor contributors wore the clothing last, i.e. during the robbery.

*Id.* at 18-19 (citations omitted). McGrew also attacks the Commonwealth's introduction of "touch DNA"[16] testimony, arguing, "[T]his is just a theory, and not a very convincing one. All that is clear from the expert testimony is that 'a lot of different variables' determine whether someone deposits DNA on an article of clothing, and in what quantity." *Id.* at 19.

With regard to the credit card information, McGrew states:

As for [Husband]'s "hunch" that the robber was the same person who used a credit card a few months before, the Commonwealth only linked the credit card to McGrew with evidence that … was inadmissible hearsay. Further, even if McGrew used a credit card at the store in the past, this is hardly surprising. He had been there 20 to 25 times.

The use of the credit card was only incriminating to the extent one can believe [Husband]'s hunch that the person who used the credit card was the same person who robbed the store. And despite the Commonwealth's dwelling on the subject -- it was referenced in opening statement, deliberated elicited through several witnesses, and stressed in closing argument -- there was too little evidence to support this conclusion.

Notably, there was no indication that the person who used the credit card was masked or otherwise difficult to identify. Yet [Husband], despite supposedly finding this person's behavior so suspicious, never identified McGrew in court or before trial as the credit card user. In fact, Officer Davis never even asked [the

_____

[16] Crouch testified "touch DNA" is "the theory that anything that you may touch or handle you can potentially be depositing your DNA on that item." N.T., 9/12/2016 – 9/13/2016, at 152.

- 8 -

victim] what it was about the robber that reminded him of the purchases. As far as he knew, nobody else did, either.

*Id.* at 20 (record citations omitted).

Moreover, McGrew attacks certain testimony regarding the Aldi bag and the fact that the robber ran in the same direction as McGrew's apartment after the incident. *Id.* at 21. He asserts the Commonwealth "neither tested the bag the robber left at King Tobacco nor did anything else to distinguish McGrew from the thousands of people who shop at the three Aldi locations within 20 miles of King Tobacco" and "the robber's going in the general direction of McGrew's home is so insignificant as to add nothing to the Commonwealth's evidence." *Id.* at 22. Lastly, McGrew points to the testimony of both Husband and Wife who described the robber as black, which contradicts the fact that McGrew is white. *Id.* He states, "At best, it certainly does not add to the shaky evidence against McGrew." *Id.*

Our well-settled standard of review regarding sufficiency of the evidence claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime

beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted), *appeal denied*, 112 A.3d 651 (Pa. 2015).

A defendant is guilty of robbery, in relevant part, if in the course of committing a theft, he "threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" 18 Pa.C.S. § 3701(a)(1)(ii).

We note McGrew's contention, in *toto*, goes to the weight rather than the sufficiency of the evidence as McGrew does not allege the Commonwealth failed to prove any specific element of the crime for which he was convicted. Rather, he is asking this Court to reweigh the evidence in his favor. Moreover, it was the jury's responsibility to determine the credibility of the DNA expert and the victims' testimony. *See Commonwealth v. Gallagher*, 547 A.2d 355, 357 (Pa. 1988) ("Determinations of credibility … are exclusively the province of the jury.").[17] Because McGrew did not raise a weight of the

_____

[17] We are guided by the following:

[I]t is necessary to delineate the distinctions between a claim challenging the sufficiency of the evidence and a claim that challenges the weight of the evidence. The distinction between these two challenges is critical.

…

- 10 -

evidence claim at sentencing or in a post-sentence motion, he is barred from raising such an argument now. *See* Pa.R.Crim.P. 607; *Commonwealth v. Cruz*, 71 A.3d 998, 1009 (Pa. Super. 2013) (finding defendant's weight

_____

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he [or she] were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-752 (Pa. 2000) (quotations, citations and footnote omitted).

challenge waived for failure to raise it before the trial court), *appeal denied*, 81 A.3d 75 (Pa. 2013); ***see also*** Pa.R.A.P. 302.

Nevertheless, as the trial court properly found:

> [B]oth store owners described the perpetrator as a male wearing a blue, hooded sweatshirt with a mask over his facial features and a cap on his head. Mr. Ramani (store owner) further indicated that he followed the perpetrator out of the store and saw the general direction in which he fled the store. Mr. Ramani then returned to the store to call a 911 operator. Upon indicating to the investigating officer the area in which the store owner had last seen the perpetrator, the police located discarded clothing rolled into a ball that matched the description of that which the perpetrator was wearing. Additional video evidence was offered by the Commonwealth depicting a male in the vicinity of the store wearing the same clothing.
>
> Mr. Ramani also believed that an earlier failed credit card transaction might be linked to the perpetrator and provided information regarding the credit card to the police. The police investigated the ownership of the card and were able to determine that the daughter of the named credit card holder was residing in York, Pennsylvania. Upon contacting the daughter, it was discovered that she resided with [McGrew]. DNA swabs were taken from [McGrew] and matched DNA evidence retrieved from the cuffs of the sweatshirt and the interior rim of the ball cap. In fact, [McGrew]'s full profile was located on both articles of clothing.
>
> Based upon the circumstantial evidence presented, the jury could link [McGrew] to the crimes charged and convict him.

Trial Court Opinion, 3/13/2017, at 3-4. Accordingly, even if McGrew had properly presented his sufficiency argument, it would fail because the Commonwealth did present ample circumstantial evidence to support his robbery conviction.

- 12 -

In McGrew's second issue, he claims the court erred in admitting allegedly hearsay evidence that linked him to use of the credit card at King Tobacco prior to the robbery. *See* McGrew's Brief at 24. Specifically, he challenges the testimony, admitted over objection, from Detective DeHart, in which he stated that Doll's son told the detective that he had a sister named Laura Strausbaugh, who lived in York. *Id.* at 25; *see also* N.T., 9/12/2016, at 107-108. McGrew contends his objection to this testimony should have been sustained because "[t]here was no need for [Detective] DeHart to specify the exact path leading him to McGrew." *Id.* at 26. Moreover, he states "the evidence was particularly problematic because neither Doll nor her son testified[,]" and therefore, he was left with no opportunity to confront the declarant. *Id.* at 27. Additionally, McGrew argues the trial court erred in stating he had an opportunity to confront the source because Strausbaugh testified at his trial. He states, "But Strausbaugh was not the source of Detective DeHart's information; rather, he relayed the statements of Doll's son as well as whatever records he viewed. Further, confrontation aside, the Commonwealth would not have linked the credit card to McGrew at all were it not for the offending testimony." *Id.* at 28 (italics in original).

The following principles guide our review:

> In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. It is firmly established, "questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent clear abuse of discretion."

***Commonwealth v. Baker***, 963 A.2d 495, 503-504 (Pa. Super. 2008)

(citations omitted), *appeal denied*, 992 A.2d 885 (Pa. 2010). Additionally,

> [i]t is not sufficient to persuade the appellate court that it might have reached a different conclusion [;] it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Christine***, 125 A.3d 394, 397 (Pa. 2015) (citations

omitted).

The general admission of evidence is governed by Rule 402 of the

Pennsylvania Rules of Evidence, which provides:

> All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible.

Pa.R.E. 402.[18]

---

[18] The exclusion of relevant evidence is governed by Rule 403 of the Pennsylvania Rules of Evidence, which provides:

> The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Pa.R.E. 403.

> Additionally,

> "[e]vidence is admissible if it is relevant — that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact — and its probative values outweighs the likelihood of unfair prejudice."

***Commonwealth v. Hicks***, 156 A.3d 1114, 1125 (Pa. 2017) (citations omitted), *cert. denied*, 138 S. Ct. 176 (U.S. 2017).

Moreover,

"'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Thus, any "out of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay." **Commonwealth v. Rega,** 593 Pa. 659, 933 A.2d 997, 1017 (Pa. 2007) (citing **Commonwealth v. Sneed**, 514 Pa. 597, 526 A.2d 749, 754 (Pa. 1987)).

**Commonwealth v. Johnson**, 42 A.3d 1017, 1035 (Pa. 2012), *cert. denied*,

133 S. Ct. 1795 (U.S. 2013).

Here, the trial court found the following:

Detective Dehart testified regarding his investigation of the credit card supplied by the victim store owner. His investigation linked the card to the owner's daughter, who resided in York, Pennsylvania and resided with [McGrew]. Defense counsel objected indicating that the statement of the card owner's son providing information regarding his sister's residence in York, Pennsylvania was inadmissible hearsay. The Commonwealth responded that the detective was testifying regarding the course of his investigation. This Court agreed and overruled the objection.

[McGrew] argues that he did not have an opportunity to confront the son's statements as to ownership of the credit card. However the daughter, Ms. Strausbaugh, who was in possession of the credit card, did testify at trial as a witness for [McGrew]. Ms. Strausbaugh acknowledged that she was in possession of her mother's credit card and that she had used it at the Ramanis' store, with [McGrew] present. [McGrew] had every opportunity to question Ms. Strausbaugh about the credit card and [McGrew]'s use or non-use of it. No error was committed by the detective's testimony regarding how he linked the credit card to [McGrew].

Trial Court Opinion, 3/13/2017, at 4-5.

Based on our review, we discern no abuse of discretion in the trial court's

decision. The trial court determined Detective DeHart's statement was

relevant to the case because it was part of explaining the course of the detective's investigation, which is permissible. **See Johnson**, 42 A.3d at 1035 (finding statement made by police sergeant that he collected a piece of evidence based on a belief made by another detective was permissible because it was used to explain that police officer's "course of conduct"). Furthermore, we conclude the probative value of the statement was not outweighed by a danger of unfair prejudice. Accordingly, the trial court did not abuse its discretion in admitting this evidence and McGrew's second claim fails.

In his final argument, McGrew alleges his theft by unlawful taking conviction should have merged with his robbery conviction for sentencing purposes. **See** McGrew's Brief at 29. Specifically, he states: "Both robbery and theft by unlawful taking … were premised on the same act: taking money from Mina Ramani. And because all the elements of theft by unlawful taking are included in robbery, the theft by unlawful taking conviction should … have merged." **Id.** (citations omitted).

Here, the trial court concedes that it erred: "Upon further review, this Court agrees and upon remand for jurisdiction will vacate the sentence imposed on the theft conviction." Trial Court Opinion, 3/13/2017, at 5.[19]

_____

[19] The Commonwealth did not object to the trial court's determination. Commonwealth's Brief at 34.

We agree with both parties and the trial court that the separate sentence for theft was in error. Accordingly, we vacate the sentence for theft by unlawful taking because it should have merged with the robbery charge for sentencing purposes. Nevertheless, McGrew's sentencing remains the same because the sentencing scheme is not upset since the sentences were to run concurrently and the theft sentence was significantly shorter than the robbery sentence. Therefore, there is no need to remand for re-sentencing.

Judgment of sentence at 18 Pa.C.S. § 3921(a) vacated. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/20/2018