J-S30043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEMETRIUS YOUNG, | : | |
| | : | |
| Appellant | : | No. 881 EDA 2018 |

Appeal from the PCRA Order March 15, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0015003-2012

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                      **FILED JULY 25, 2019**

Demetrius Young ("Young") appeals from the Order dismissing his first

Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").

***See*** 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

This Court previously set forth the relevant facts underlying this appeal

as follows:

> Young's convictions stem from an altercation outside of a
> Philadelphia nightclub that resulted in the death of one man,
> Marcus Smith ("Victim").  …  In 2011, Victim, Felicia Madison
> [("Madison")], Victim's fiancée, and Cortez Pryor [("Pryor")] were
> living together.  In May [] 2011, Pryor was stopped by the police
> while driving Victim's car.  Pryor ran from the police into Madison
> and Victim's house.  The police arrested Victim instead of Pryor.
> After that incident, Pryor and Victim's relationship deteriorated.
>
> On April 1, 2012, at about 3:45 a.m., Sheila Williams
> [("Williams")] was outside waiting to enter the Wheels of Soul
> nightclub [(hereinafter, "the nightclub"),] located at 61st and

Market Streets in Philadelphia.[1] A red car pulled up and Williams heard Young, who was sitting in the passenger seat, comment "there go that niggah right there." Williams paid attention to the men because she believed there was going to be a fight. The driver, later identified as [] Pryor, exited the car and met Victim at the back of the car.[2] Victim punched Pryor. Young got out of the car and grabbed Victim. Pryor retrieved a firearm from the car and returned to the altercation. As soon as Victim broke free of Young's hold, Pryor shot Victim. Victim immediately fell to the ground[,] and Williams heard twenty to thirty shots.[3] After the shooting, Young and Pryor drove away in the red car towards 60th Street. [While Pryor was driving, patrons outside of the nightclub returned fire in the direction of the car, striking Pryor with a bullet in the jaw and incapacitating him. After the car came to a stop, Young flagged down a passing motorist, who transported Young and Pryor to Mercy Philadelphia Hospital (hereinafter, "Mercy Hospital").] On April 2, 2012, Williams identified co-defendant Pryor as the shooter from a photo array. On May 2, 2012, Williams identified Young from a photo array.

On the night of the shooting, Darryl Seals [("Seals")], Victim, and James McGill [("McGill")] were at the … nightclub at 60th and Market Streets. At around 3:45 a.m., McGill and Victim left the nightclub. Seals heard gunshots[,] [] ran outside[,] and saw that Victim had been shot. Seals got his car and drove Victim to the Hospital of the University of Pennsylvania [(hereinafter, "Penn Hospital")].

At 3:58 a.m., Victim was pronounced dead at [Penn] Hospital …. According to Dr. Sam Gulino, the Chief Medical Examiner for the County of Philadelphia, [Victim] suffered ten gunshot wounds: four to the leg, three to the chest, two to the

---

[1] Notably to the instant appeal, Williams testified at trial that prior to arriving at the nightclub, she had consumed two or three alcoholic beverages and smoked marijuana. *See* N.T., 12/2/14, at 152.

[2] Williams testified that when she had initially noticed the interaction between Victim and Pryor, she was located approximately 50 feet away. *See id.* at 192-93. However, she then moved closer to get a better view. *See id.* at 154, 198-200.

[3] Once the shooting began, Williams hid behind a pillar for protection. *See id.* at 158-59, 160-61, 204-05.

arm, one to the back, and one to the hip. Victim suffered injuries to the lung, heart, diaphragm, liver, and spine as a result of these gunshots.

***Commonwealth v. Young***, 134 A.3d 493 (Pa. Super. 2015) (unpublished memorandum at 1-3) (footnotes added; citations to transcript and trial court Opinion omitted, some brackets omitted).

Shortly after Pryor and Young arrived at Mercy Hospital, Philadelphia Police Officer Tanya Brown ("Officer Brown") responded to a radio call to check on Pryor, as the victim of a shooting. ***See*** N.T., 12/3/14, at 57. Officer Brown was unable to speak to Pryor due to his injuries, but encountered Young in the hallway outside of Pryor's operating room. ***See id.*** at 60. Officer Brown approached Young and asked him whether he knew anything about the shooting. ***See id.*** Young responded that he had been driving with Pryor, Young's cousin, in the area of 60th and Market Streets, when he heard two gunshots. ***See id.*** Young turned and saw that Pryor had been shot in the jaw. ***See id.*** at 60-61. While Officer Brown was talking with Young, medical personnel decided to transfer Pryor to Penn Hospital for more intensive treatment. ***See id.*** at 61. Per police protocol, Officer Brown "secured" Young as a witness to Pryor's shooting, called in another police officer, Tamika Reid ("Officer Reid"), to stay with Young, and accompanied Pryor to Penn Hospital. ***See id.*** at 61, 73-74. Notably to this appeal, on cross-examination, Officer Brown stated that she had told Young, who had made no attempt to terminate the interview or leave the hospital, that "he wouldn't be able to leave because he needed to give a statement" as a witness. ***Id.*** at 69.

Officer Reid testified that while she was with Young at Mercy Hospital, Young gave a second statement to her, after Officer Brown was called away. *See id.* at 82-83. Young's eyewitness statement to Officer Reid mirrored the above-mentioned statement that he had given to Officer Brown. *See id.* at 83-85. Officer Reid subsequently transported Young to the police station for a statement. *See id.* at 85-86.[4]

In the morning after the shooting, a pedestrian discovered a discarded handgun lying in the road, a few blocks away from the nightclub. *See* N.T., 12/2/14, at 218-20. Subsequent forensic analysis of the handgun revealed that it was the gun used in the shooting of Victim, and that it contained DNA from both Pryor and Young. *See* N.T., 12/3/14, at 186-92, 239-42.

In May 2012, the Commonwealth charged Young with homicide and related offenses. The matter proceeded to a jury trial, wherein Young was represented by Fred Harrison, Esquire (hereinafter, "trial counsel"). At the close of trial, the jury found Young guilty of third-degree murder, possession of an instrument of crime, and firearms not to be carried without a license.[5] On December 5, 2014, the trial court sentenced Young to an aggregate term of 19½ to 39 years in prison.

---

[4] While at the police station, Young gave a witness statement to another police officer, Detective Donald Marano ("Detective Marano"), which was consistent with his prior statements. *See* N.T., 12/3/14, at 255-59.

[5] *See* 18 Pa.C.S.A. §§ 2502(c), 907(a), 6106(a)(1). The jury acquitted Young of criminal conspiracy. *See id.* § 903(a).

- 4 -

Young, through trial counsel, filed a timely direct appeal, challenging the weight and sufficiency of the evidence supporting his convictions. This Court affirmed the judgment of sentence. *See Young*, 134 A.3d 493 (unpublished memorandum). Young did not seek allowance of appeal with the Pennsylvania Supreme Court.

On November 2, 2016, Young timely filed a *pro se* PCRA Petition, his first, raising claims of trial counsel's ineffectiveness. Young later filed a *pro se* Supplemental PCRA Petition. The PCRA court appointed Young counsel, who thereafter filed an Amended PCRA Petition, reasserting trial counsel's ineffectiveness. On November 9, 2017, the PCRA court issued a Pa.R.Crim.P. 907 Notice of Intent to Dismiss Young's Petition without an evidentiary hearing. Young responded by filing a *pro se* Supplemental PCRA Petition, and requesting the appointment of new PCRA counsel.

By an Opinion and Order entered on March 15, 2018, the PCRA court dismissed Young's PCRA Petition, without conducting a hearing, based on the court's finding that all of Young's claims lack merit. Young then filed the instant timely appeal.[6]

Young presents the following issues for our review:

1. Did the PCRA [c]ourt err and/or abuse its discretion when it denied [Young's] [P]etition (without a hearing) under the PCRA[,] seeking a new trial based upon a claim that trial counsel was ineffective for failing to request that the court give

---

[6] The PCRA court did not order Young to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

a charge to the jury pursuant to **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954)[7]?

2. Did the PCRA [c]ourt err and/or abuse its discretion when it denied [Young's] [P]etition (without a hearing) under the PCRA[,] seeking a new trial based upon a claim that trial counsel was ineffective for failing to seek suppression of a statement that [Young] made to the police without being advised of his rights under **Miranda v. Arizona**, 384 U.S. 436 (1966)[,] and its progeny?

Brief for Appellant at 4 (issues numbered, footnote added).

The applicable standards of review regarding the dismissal of a PCRA petition, a petitioner's right to an evidentiary hearing, and ineffectiveness claims are as follows:

> This Court's standard of review regarding an order [dismissing] a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.
>
> The right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. …
>
> To prevail on a claim alleging counsel's ineffectiveness under the PCRA, [a petitioner] must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's

---

[7] In **Kloiber**, the Supreme Court held that "where the witness is not in a position to clearly observe the assailant," or her identification is "weakened by failure to identify the defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the [trial c]ourt should warn the jury that the testimony as to identity must be received with caution." **Kloiber**, 106 A.2d at 827.

ineffectiveness, *i.e.*[,] there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different.

***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012) (citations and brackets omitted); ***see also Commonwealth v. Solano***, 129 A.3d 1156, 1162-63 (Pa. 2015) (stating that failure to establish any prong of the test will defeat an ineffectiveness claim). Finally, "[w]hen evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential." ***Commonwealth v. Lesko***, 15 A.3d 345, 380 (Pa. 2011) (citation and quotation marks omitted).

In his first issue, Young argues that trial counsel was ineffective for failing to ask the trial court to issue a cautionary instruction, pursuant to ***Kloiber***, ***supra***, concerning the testimony of Williams, the only eyewitness to identify Young as being involved in the crime. ***See*** Brief for Appellant at 32-42. Specifically, Young avers that Williams (1) was under the influence of alcohol and marijuana at the time of the shooting; (2) was too far away from Young to clearly view him; and (3) hid behind a pillar after the shooting began. ***See id.*** at 37-38, 40. According to Young, trial counsel acted unreasonably in failing to request a cautionary instruction, and this failure deprived Young of a fair trial, since it could have called into question the credibility of the sole identification witness. ***See id.*** at 40-42.

In its Opinion and Order, the PCRA court cogently addressed Young's claim and set forth the relevant law. ***See*** PCRA Court Opinion and Order, 3/15/18, at 7-9. As the PCRA court's analysis is supported by the law and

- 7 -

record, we incorporate it as though fully set forth herein. ***See id.*** We conclude that, under the circumstances, wherein Williams had a clear view of Young and never equivocated in her identification, a ***Kloiber*** instruction was not warranted. ***See Commonwealth v. Dennis***, 715 A.2d 404, 411 (Pa. 1998) (stating that where an eyewitness has had "protracted and unobstructed views" of the defendant and consistently identified the defendant throughout the investigation and at trial, there is no need for a ***Kloiber*** instruction); ***Kloiber***, 106 A.2d at 826 (stating that "[w]here the opportunity for positive identification is good and the witness is positive in his [or her] identification and his [or her] identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution[.]"). Since there was no arguable merit to requesting a ***Kloiber*** instruction, trial counsel rendered effective assistance by not requesting one. ***See Commonwealth v. Laird***, 726 A.2d 346, 355 (Pa. 1999) (stating that counsel cannot be deemed ineffective for declining to present a meritless claim). Accordingly, Young's first issue entitles him to no relief.

In his second issue, Young contends that trial counsel was ineffective for failing to file a motion to suppress his statements to Officers Brown and Reid at Mercy Hospital, where the police had not read Young ***Miranda*** warnings prior to his statements. ***See*** Brief for Appellant at 43-55.

"[W]here a defendant alleges that counsel ineffectively failed to pursue a suppression motion, the inquiry is whether the failure to file the motion is

- 8 -

itself objectively unreasonable, which requires a showing that the motion would be meritorious." ***Commonwealth v. Johnson***, 179 A.3d 1153, 1160 (Pa. Super. 2018). "[T]he defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." ***Commonwealth v. Watley***, 153 A.3d 1034, 1044 (Pa. Super. 2016) (citation omitted).

Young contends that he was in custody at the time of his statements at Mercy Hospital, and emphasizes the testimony of Officer Brown that she had "clearly told [] Young … that he wouldn't be able to leave because he needed to give a statement." Brief for Appellant at 49 (quoting N.T., 12/3/14, at 69). Additionally, Young stresses that he "did not present himself at the police station, but was transported there in a police vehicle by a uniformed officer." Brief for Appellant at 51. Under these circumstances, Young urges, no reasonable person would have believed that he or she was free to leave and discontinue interacting with the police. ***Id.*** Finally, Young avers that the police held him at the police station for more than 24 hours and questioned him without informing him of his ***Miranda*** rights. ***Id.*** at 52.

In its Opinion and Order, the PCRA court addressed Young's claim and set forth the law concerning ***Miranda***. ***See*** PCRA Court Opinion and Order, 3/15/18, at 4-7. We incorporate the court's analysis as though fully set forth herein. ***See id.*** The PCRA court's rationale is supported by the record and the law, and we agree with its determinations that (1) suppression of Young's

statements at Mercy Hospital was not warranted, as he was not subject to a custodial interrogation at the time; and (2) trial counsel was therefore not ineffective for failing to file a suppression motion.[8]

Accordingly, the PCRA court did not err or abuse its discretion in dismissing Young's first PCRA Petition without a hearing.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/25/19

---

[8] Moreover, even if Young's police statements (which did not implicate him in any crimes) had been suppressed, there is no reasonable probability that the verdict would have been different, **see Watley**, **supra**, particularly in light of Williams's testimony and the murder weapon bearing DNA from Young and Pryor.

FILED

MAR 1 5 2018

PCRA Unit
CP Criminal Listings

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION


COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0015003-2012
    :
    :
 v.    :
    :
    :
    :
DEMETRIUS YOUNG   :
    :


## ORDER AND OPINION


**McDermott, J.**           **March 15, 2018**

### Procedural History

On May 11, 2012, the Petitioner, Demetrius Young, and his co-defendant, Cortez Pryor, were arrested and charged with Murder and related offenses. On December 1, 2014, the Defendant appeared before this Court and elected to be tried by jury. On December 4, 2014, the jury convicted the Petitioner of Third-Degree Murder, Carrying a Firearm Without a License ("VUFA 6106"), and Possession of an Instrument of Crime ("PIC").[1] On December 5, 2014, this Court sentenced the defendant to sixteen to thirty two years of imprisonment for Murder, three and a half to seven years of imprisonment for Carrying a Firearm without a License to run consecutively, and a concurrent term of imprisonment of one to two years for PIC, for a total sentence of nineteen and a half to thirty nine years of imprisonment.[2]

---

[1] The jury acquitted the Petitioner of Conspiracy. The charge of Carrying a Firearm in Philadelphia was *nolle prossed.*

[2] For the purposes of sentencing, this Court used a pre-sentence and mental health report that had been completed for the Petitioner's previous, unrelated gun charge. *See* CP-51-CR-0003197-2012. The reports in that matter were generated on July 17, 2013. Since the Petitioner was in custody for the duration of time between the completion of reports and the instant sentencing hearing, the Petitioner's sentencing considerations memorialized in the reports had not changed.

The Petitioner appealed and on November 16, 2015, the Superior Court affirmed his judgment of sentence. The Petitioner did not file a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania.

On November 2, 2016, the Petitioner filed a timely *pro se* Post-Conviction Relief Act ("PCRA") petition. On June 29, 2017, the Petitioner filed a *pro se* supplemental petition. On September 7, 2017, through appointed PCRA counsel, the Petitioner filed an Amended Petition. On November 9, 2017, upon independent review, this Court found the Petitioner's claims meritless and issued a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907.[3] On November 29, 2017, the Petitioner filed a Motion for New Counsel.[4] On December 8, 2017, this Court continued the instant matter for PCRA counsel to send a copy of the Amended Petition to the Petitioner. On February 22, 2018, PCRA counsel sent this Court confirmation that the Amended Petition had been delivered. On February 27, 2018, the Petitioner filed a supplemental petition.[5]

## Facts

In its November 16, 2015 Opinion, the Superior Court adopted this Court's summary of the facts and recited them as follows:

> In 2011, [the decedent], Felicia Madison, [the decedent's] fiancée, and Cortez Pryor were living together. In May of 2011, Pryor was stopped by the police while driving [the decedent's] car. Pryor ran from the police into Madison and [the decedent's] house. The police arrested [the decedent] instead of Pryor. After that incident, Pryor and [the decedent's] relationship deteriorated.
> On April 1, 2012, at about 3:45 a.m., Sheila Williams was outside waiting to enter the Wheels of Soul nightclub located at 61st

---

[3] This Court did not require the Commonwealth to file a response.

[4] In his November 29, 2017 Motion, the Petitioner alleged that PCRA counsel failed to provide him with a copy of the September 7, 2018 Amended Petition. He did not raise any new issues.

[5] The Petitioner raises three additional issues in his supplemental petition, alleging that trial counsel was ineffective for failing to request a jury instruction concerning eyewitness Sheila William's drug use, file a motion to suppress William's identification of the Petitioner in her second statement, and object to an unascertained detective's testimony. Since PCRA Counsel is presumed to raise all meritorious issues within an Amended Petition, this Court need not address the above *pro se* claims. *See Commonwealth v. Jette*, 23 A.3d 1032, 1044–1045 (Pa. 2011); *Commonwealth v. Baumhammers*, 92 A.3d 708, 714 (Pa. 2014).

2

and Market Streets in Philadelphia. A red car pulled up and Williams heard [the Petitioner], who was sitting in the passenger seat, comment "there go that niggah right there." Williams paid attention to the men because she believed there was going to be a fight. The driver, later identified as Cortez Pryor, exited the car and met [the decedent] at the back of the car. [The decedent] punched Pryor. [The Petitioner] got out of the car and grabbed [the decedent]. Pryor retrieved a firearm from the car and returned to the altercation. As soon as [the decedent] broke free of [the Petitioner's] hold, Pryor shot [the decedent]. [The decedent] immediately fell to the ground and Williams heard twenty to thirty shots. After the shooting, [the Petitioner] and Pryor drove away in the red car towards 60th Street. On April 2, 2012, Williams identified codefendant Pryor as the shooter from a photo array. On May 2, 2012, Williams identified [The Petitioner] from a photo array.

On the night of the shooting, Darryl Seals, [the decedent], and James McGill were at the Wheels of Soul nightclub at 60th and Market Streets. At around 3:45 a.m., McGill and [the decedent] left the nightclub. Seals heard gunshots and ran outside and saw that [the decedent] had been shot. Seals got his car and drove [the decedent] to the Hospital of the University of Pennsylvania.

At 3:58 a.m., [the decedent] was pronounced dead at the Hospital of the University of Pennsylvania. According to Dr. Sam Gulino, the Chief Medical Examiner for the County of Philadelphia, Smith suffered ten gunshot wounds: four to the leg, three to the chest, two to the arm, one to the back, and one to the hip. [The decedent] suffered injuries to the lung, heart, diaphragm, liver, and spine as a result of these gunshots.

*Commonwealth v. Demetrius Young*, 460 EDA 2015 at *1 (Pa. Super. Nov. 16, 2015) (non-precedential decision).

**Discussion**

The Petitioner raises two issues for review, alleging that trial counsel was ineffective for failing to: (1) file a Motion to Suppress the Petitioner's statements; and, (2) request a *Kloiber* identification instruction. To warrant relief based on an ineffectiveness claim, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Bardo*, 105 A.3d 678, 684 (Pa. 2014); 42 Pa.C.S. § 9543(a)(2)(ii).

3

Counsel is presumed to have rendered effective assistance. *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (*citing Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117 (Pa. 2012)).

To overcome the presumption, the Petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court of Pennsylvania has applied the *Strickland* test by looking to three elements, whether (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). If a claim fails under any necessary element of the *Pierce* test, the court may proceed to that element first. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195–1196 (Pa. 2011). Counsel will not be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Rivera*, 108 A.3d 779, 789 (Pa. 2014) (*citing Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006)).

The Petitioner contends that trial counsel was ineffective for failing to file a motion to suppress his police statement after officers failed to properly *Mirandize* him. The Petitioner claims that he provided two verbal interviews to police: one at the hospital where his co-defendant Pryor was being treated for wounds, and again with homicide detectives at the Police Administration Building.

When a petitioner asserts ineffective assistance of counsel based upon the failure to pursue a suppression motion, proof of the merit of the underlying suppression claim is necessary to demonstrate ineffective assistance. *Commonwealth v. Watley*, 152 A.3d 1034, 1044 (Pa. Super. 2016) (*citing Commonwealth v. Metzger*, 441 A.2d 1225, 1228 (Pa Super. 1981)). An individual is entitled to *Miranda* warnings when subject to a custodial interrogation. *Miranda v.*

4

*Arizona*, 384 U.S. 436 (1966). In order to trigger the *Miranda* safeguards, there must be both custody and interrogation; statements not made in response to a custodial interrogation are classified as gratuitous and not subject to suppression. *Commonwealth v. Cruz*, 71 A.3d 998, 1003 (Pa. Super. 2013) (*citing Commonwealth v. Heggins*, 809 A.2d 908, 914 (Pa. Super. 2002)).

A custodial interrogation is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Commonwealth v. Cooley*, 118 A.3d 370, 376 (Pa. 2015) (*citing id.* at 444). In deciding whether a suspect is in custody, a court must (1) examine the circumstances surrounding the interrogation and (2) determine whether a reasonable person would have felt that they were at liberty to terminate the interrogation and leave. *Commonwealth v. Yandamuri*, 159 A.3d 503, 520 (Pa. 2017) (*citing J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011)). An individual is deemed to be in custody when he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that he freedom of action or movement is restricted by interrogation. *Cruz* at 1004 (*citing In re K.Q.M.*, 873 A.2d 752, 755 (Pa. Super. 2005)).

Suppression of the Petitioner's statement at the hospital was not warranted, as he was not subject to a custodial interrogation at the time. At trial, Officer Tanya Brown testified that she responded to a radio call at 3:45 a.m. on the night of the shooting and was asked to check on gunshot victim Cortez Pryor. N.T. 12/3/2014 at 57. Officer Brown was unable to speak to Pryor, but encountered the Petitioner outside of the operating room. *Id.* at 60. There, Officer Brown asked the Petitioner if he knew Pryor, and the Petitioner responded that they were cousins. *Id.* The Petitioner further volunteered that that he and Pryor drove along Market Street, whereupon Pryor suffered a gunshot wound to the face. *Id.* at 60, 66. The Petitioner explained

that he flagged down the driver of a green minivan, who transported them to emergency care. *Id.*; Commonwealth Exhibit C-27.

The Petitioner does not allege that he was significantly deprived of his freedom of action at any time during his conversation with Officer Brown. After speaking to the Petitioner, Officer Brown informed him that he needed to give a statement as a potential witness. *Id.* at 69. Officer Brown never handcuffed the Petitioner, and he did not make an attempt to leave the hospital at any time during his correspondence with Officer Brown. *Id.* Petitioner fails to prove that he was arrested or legally detained at the time of his statement.

The facts of the instant case are comparable to those found in *Yandamuri*. In *Yandamuri*, the Supreme Court of Pennsylvania held that an appellant was not in custody for *Miranda* purposes when police officers questioned the appellant at a casino and later at the police station. In that matter, the appellant was removed from a casino table and escorted to a private hallway, where he was questioned by to police detectives about a murder and kidnapping. Then the appellant voluntarily agreed to accompany officers to the police station, where he provided incriminating videotaped and written statements. *Yandamuri*, 159 A.3d at 509. The Supreme Court held that the appellant was not subject to custodial interrogation at either the casino or in the police station, has his presence was voluntary. Therefore, suppression was unwarranted.

In the instant matter, the Petitioner spoke to Officer Brown in a public hallway, and voluntarily described his self-serving version of the shooting. Since the Petitioner was not subject to a custodial interrogation, trial counsel had no basis to file a motion to suppress. At the end of his discussion with Officer Brown, the Petitioner voluntarily accompanied officers to the Police Administration Building. Unlike the appellant in *Yandamuri*, the Petitioner did not provide a statement at the Police Administration Building, beyond expressing that he no longer

6

wished to talk to the police. Police officers honored his request, did not take a statement from him, and did not seek to admit any evidence concerning the Petitioner's alleged statement. There was no statement taken at the Police Administration Building for the Petitioner to suppress. The claims have no merit.

The Petitioner further fails to demonstrate that police detectives took a written statement from him at the Police Administration Building. At trial, Detective Marano testified that after the Petitioner arrived at the Police Administration Building, he spoke to detectives for a matter of minutes before refusing to give a formal statement. N.T. 12/3/2014 at 264. This Court did not admit any written record of the Petitioner's verbal interviews as evidence. The Petitioner's claims are without merit.

The Petitioner argues that he was entitled to a *Kloiber* instruction on the grounds that eyewitness Sheila Williams was intoxicated at the time of her observation, she did not know the witness, and failed to identify the Petitioner on a prior occasion when shown a photo array. A petitioner is entitled to a *Kloiber* instruction warning the jury that testimony is to be received with caution if a witness: (1) was not in a position to clearly observe or positively identify the Petitioner; (2) equivocated on the identification; or (3) failed to identify the Petitioner previously. *Commonwealth v. Johnson*, 139 A.3d 1257, 1281 (Pa. 2016) (*citing Commonwealth v. Ali*, 10 A.3d 282, 303 (Pa. 2010)). The instruction alerting the jury that a witness might be physically incapable of making a reliable observation is distinct from the credibility determination a fact-finder must make. *Commonwealth v. Collins*, 70 A.3d 1245, 1255 (Pa. Super. 2013).

The Petitioner is not entitled to relief, as his contention that Williams previously failed to identify him via photo array is contradicted by the record. On April 2, 2013, Williams gave a statement to police detectives and identified co-defendant Cortez Pryor via photo array.

7

Williams was not provided a photo array containing the Petitioner's image. On May 2, 2013, Williams agreed to provide a second statement to police detectives and identified the Petitioner via a photo array. Nothing in the record indicates that Williams failed to identify or misidentified the Petitioner during the April 2, 2013 or May 2, 2013 interviews.

Moreover, the Petitioner's claim that Williams was intoxicated at the time of the shooting relates to the credibility of her testimony, not her physical ability to observe and identify him as a shooter. *See Commonwealth v. Smith*, 70 A.3d 1245, 1255–1256 (Pa. Super. 2013) (*citing Commonwealth v. Paolello*, 665 A.2d 439, 455 (Pa. 1995)) (where a challenge relates to the credibility of an eyewitnesses testimony, such as a witness' intoxication, a *Kloiber* instruction is not required). The fact that Williams was not acquainted with the Petitioner similarly speaks to her credibility, and the claim must fail on similar grounds.

Ultimately, this Court provided the jury with the following standard instruction regarding witness credibility:

> You must consider and weigh the testimony of each witness and give it such weight as in your judgment it is fairly entitled to receive. The matter of the credibility of the witness, that is, whether the testimony is believable and accurate in whole or in part is solely for your determination. I am going to mention some of the factors which might bear on that determination: Whether the witness has any interest in the outcome of the case or has friendship or animosity toward other persons concerned in the case; the behavior of the witness on the witness stand; the witness' demeanor; the witness' manner of testifying and whether the witness shows any bias or prejudice which might color that testimony; the accuracy of the witness' memory and recollection; the witness' ability and opportunity to acquire knowledge of or to observe the matters concerning which the witness testifies; the consistency or inconsistency of the witness' testimony as well as its reasonableness or unreasonableness in light of all of the evidence in this case.
>
> If you conclude that one of the witnesses testified falsely and did so intentionally about any fact which is necessary to your decision in this case, then for that reason alone, you may, if you wish, disregard everything that the witness said. However, you are not

required to disregard everything that the witness said for this reason. It is entirely possible that the witness testified falsely and intentionally so in one respect, but truthfully about everything else. If you find that to be the situation, then you may accept that part of the testimony which you find to be truthful and which you believe, and you may reject that part which you find to be false and not worthy of belief.

N.T. 12/4/2014 at 91-93. Trial counsel had no basis to request an additional instruction.

For the foregoing reasons, the petition is hereby DISMISSED. The Petitioner is hereby notified that he has thirty (30) days from the date of this Order and Opinion to file an appeal with the Superior Court.

BY THE COURT

_Barbara McDermott_
Barbara A. McDermott, J.