J-A15028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT ACREE | : | |
| | : | |
| Appellant | : | No. 1373 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 26, 2024
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0000201-2023

BEFORE: BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:       **FILED: OCTOBER 1, 2025**

Appellant, Robert Acree, seeks review of the judgment of sentence entered by the Court of Common Pleas of Dauphin County (trial court). In 2024, Appellant was found guilty after a jury trial of one count of sexual assault. He was sentenced to a prison term of five to 10 years, followed by three years of probation. On appeal, he claims that the evidence of the victim's lack of consent was insufficient, and that the trial court erred in permitting the Commonwealth to elicit testimony from the victim regarding the fact that she had been employed as a judicial secretary. Finding no merit in either of these grounds, we affirm.

The trial court summarized the relevant case facts and procedural history as follows:

---

[*] Former Justice specially assigned to the Superior Court.

In the beginning of August 2022, [the victim] began speaking with [A]ppellant through Facebook Dating. They agreed to meet in person on August 6, 2022, in Harrisburg, a neutral location for both parties. Following lunch at Fiesta Mexico, [the victim] suggested they go together to get drinks at Underdog.

While having beers, [A]ppellant began acting short-tempered with [the victim]. The bartender, Ashley Figueroa, came over to [the victim] while [A]ppellant was in the bathroom to make sure [the victim] was okay. Eventually, [A]ppellant suggested going to a hotel or parking at a park. [The victim] explained that she was not willing to have sex with him but suggested going to the movies instead. [A]ppellant drove himself and [the victim] to the theater and, upon arrival, they found out the theater was no longer in operation.

While discussing what to do next, [A]ppellant told [the victim] that he had a gift for her under the passenger seat. She reached back but did not feel anything. She climbed over the center console to get into the back seat and reached under the front passenger seat. While she was looking under the front passenger seat, [A]ppellant exited the car and reentered in the back seat with [the victim]. [A]ppellant took off [the victim's] shoes, began sucking her toes, and stated that he wanted to taste her. [A]ppellant took off [the victim's] underwear and performed oral sex on her. [A]ppellant moved up towards her face in what [the victim] believed was a move to kiss her.

Instead, [A]ppellant inserted his penis into her vagina. [The victim] said, "Please stop, no. I don't want to do this." [A]ppellant not stop. Instead, [A]ppellant had her hands behind her head and had all his weight on top of her. [The victim] began screaming and motioning her hands in the window, trying to get the attention of others for help.

[A]ppellant told [the victim], "Stop it or I'll fucking kill you." [A]ppellant stopped when [the victim] began crying. [the victim's] phone made a sound, and she stated that it was probably her ex-husband or her daughter and that she needed to answer it.

While [A]ppellant reached for the phone, [the victim] opened the passenger door and jumped out of the vehicle. [A]ppellant returned to the driver's seat of his vehicle. [the victim] demanded that he give her purse back to her. He returned her purse and

cellular phone and drove away. [The victim] stopped a woman and her son for help. The woman helped her while her son called the police. An ambulance arrived to take [the victim] to the hospital where a sexual assault forensic examination (SAFE) was performed.

The results of the forensic examination showed scratches on her left inner thigh and outer right thigh, and vaginal injuries including four breaks in the skin caused by trauma. The nurse who administered the forensic examination testified that because it is uncommon to find injuries in a sexual assault, she has only seen injuries in approximately eight to ten exams out of the estimated two hundred vaginal examinations that she has performed.

The parties stipulated to the serology report that tested the DNA recovered from [the victim] during her SAFE physical. The results showed that the DNA was a mixture of [A]ppellant's and [the victim's] DNA to a degree of 5.9 octillion.

Trial Court 1925(a) Opinion, at 1-3 (internal citations omitted, some indentations added).

The Commonwealth charged Appellant with rape, unlawful restraint, and sexual assault. The jury ultimately found him guilty of only the latter count, sexual assault (18 Pa.C.S.A. § 3124.1), acquitting him of rape and unlawful restraint. He was then sentenced as outlined above, and a timely notice of appeal was filed. Both the trial court and Appellant complied with Pa.R.A.P. 1925. In Appellant's brief, he raises two issues for our consideration:

A. Whether the trial court erred in accepting the jury verdict where the evidence presented by the Commonwealth failed to establish nonconsensual sexual relations.

B. Whether the trial court erred in allowing the Commonwealth to elicit prejudicial statements from the [victim] in an attempt to bolster her credibility.

Appellant's Brief, at 5 (suggested answers omitted).

- 3 -

Appellant's first claim is that the judgment of sentence must be vacated because the Commonwealth presented insufficient evidence at trial that he had sexual intercourse with the victim without her consent.

On review of such sufficiency claims, we must determine if the evidence presented at trial, including all reasonable inferences derived from that evidence, "was sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." *Commonwealth v. Cruz*, 71 A.3d 998, 1006 (Pa. Super. 2013) (citation and brackets omitted). For review purposes, all record evidence must be considered "in the light most favorable to the Commonwealth as the verdict winner." *Id*.

Moreover, the evidence may be sufficient to sustain a guilty verdict even where it is wholly circumstantial. *See Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009). The evidence "need not preclude every possibility of innocence." *Id*. The finder of fact may resolve any question about the defendant's guilt "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id*.(quoting *Commonwealth v. Bostick*, 958 A.2d 543, 560 (Pa. Super. 2008)); *see also Commonwealth v. Smith*, 956 A.2d 1029, 1035-36 (Pa. Super. 2008) (same).

In a criminal case, "the credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact, [which] is free to believe all, part, or none of the evidence." *Commonwealth v. Williams*,

854 A.2d 440, 445 (Pa. 2004). The credibility of the testimony of a witness goes to the weight of the evidence, but not to its legal sufficiency. *See Commonwealth v. Dunkins*, 229 A.3d 622, 631-32 (Pa. Super. 2020).

The crime of sexual assault is defined, in pertinent part, as engaging "in sexual intercourse or sexual deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1. "[T]he uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant[.]" *Commonwealth v. Andrulewicz*, 911 A.2d 162, 167 (Pa. Super. 2006) (quoting *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. 2006)).

Here, there is no dispute that Appellant engaged in sexual intercourse with the victim. The sole question at trial as to the offense of sexual assault was whether the victim consented. The victim testified that, prior to meeting him for the first time, she told Appellant that she did not want to "hook up" on their upcoming date. N.T. Trial, 4/1/2024, at 82. While on their date later that night, the victim rejected Appellant's suggestion that they go to a private place, such as a hotel, to have sexual intercourse. *See id*., at 93, 95.

The victim admitted that, toward the end of their date, when she and Appellant were in the back seat of his vehicle, the victim allowed Appellant to perform oral sex on her. *See id*., at 100. However, immediately after that, when Appellant "scooted up" to climb directly on top of her, he penetrated the victim's vagina with his penis despite her clear lack of consent:

[The victim]: So obviously my knees were up when he was performing oral sex and he like scooted up and I thought he was just like going to kiss me or, you know, like my neck area, but he had put his penis inside me at that time.

[Counsel]: So he now is penetrating you with his penis?

[The victim]: Yes.

[Counsel]: What's your reaction to that?

[The victim]: **I instantly said no. I said, I'm not hooking up, you know, it's no. I just kept saying no and, oh, God, no, like why is this happening. I remember saying that over and over, please stop, no, I don't want to do this.**

[Counsel]: And you said that you kept [on] saying no, please stop, I don't wanna do this. When you were saying those things did he stop?

[The victim]: No, he didn't. He didn't say anything at that time to me. He just kept going. Like his hips were like on my hips, like pushing me down. At one point he had my hands behind my head and he was holding them back and like all of his weight was on top of me. So there was no way for me to maneuver between these two seats. And my head was banging up against the back door, passenger door.

[Counsel]: What happens then? You know, you're saying these things. He's not listening. He's still having sex with you?

[The victim]: Yes.

[Counsel]:Tell us then what happens.

[The victim]: The only way I can describe it is I just like left my body. I almost -- like I was floating above myself. I was just praying that it would be over, but as I would come back to I would be saying, oh, my God, no, and motioning my hands out the window, like can anybody hear me, can anybody help me, and **I was screaming and like trying to do this behind my head at the window.**

- 6 -

[Counsel]: And if the record could please reflect that the witness is waving her arm up over her head. Is that a fair --

[The victim]: Yes, just waving. I was hoping somebody was walking past or could hear me scream and I was sort of waving so that they could see my hands in the window because the window wasn't down. The doors were locked, because I remember looking overtop of my like shoulder here and I saw that the door was locked_

[Counsel]: As you're waving and you're -- you said you're screaming. What are you saying?

[The victim]: **God, please stop; help me, God, can somebody hear me. Like I kept screaming like just hoping somebody would hear me and just saying, oh, God, like, oh, God, help me, like, no, please stop. I just remember repeating myself over and over again, but a lot of the time I just said, oh, God, please help me**.

[Counsel]: You said, though, that you are saying no?

[The victim]: **No and stop**.
`
[Counsel]: No and stop. Any idea how many times you said that?

[The victim]: A lot of times. And like initially in the middle, towards the end it was no. It was no, stop, and God, please help me and like just stop. And then at one point he just said -- like **I was waving my hands and saying help me, can anybody hear me, like why can't anybody hear me. And he it said, stop it or I'll fucking kill you**.

[Counsel]: When he says to you stop it or I'll fucking kill you, tell us what you're thinking at that point in time.

[The victim]: At that point I'm like just really just trying to survive at this point. I really am just trying to say or whatever I can to like get out of that car, for him to let me out of that car at that point. So it's just like survival and just trying in the end for him not to kill me or hurt me.

[Counsel]: How long is this going on for? I mean, I'm sure you don't have a stopwatch on, but can you give us any idea of what this looks like in terms of time?

[The victim]: It went on forever it seems like. I just felt like he would not stop raping me until he was finished.

*Id*. at 103-05 (emphasis added).

The victim's testimony, and specifically her statements regarding her lack of consent, were sufficient evidence upon which Appellant could be found guilty of sexual assault. She testified that she repeatedly told Appellant that she did not want to have sexual intercourse with him, and that he refused to cease their sexual contact. In fact, according to the victim, Appellant responded to the victim's pleas to stop by threatening to kill her unless she stopped protesting. The jury was free to believe all, part, or none of the victim's testimony, and we find there to be no valid basis compelling us to disturb the jury's credibility determination. Thus, Appellant's sufficiency claim has no merit. *See e.g., Andrulewicz*, 911 A.2d at 166 (upholding indecent assault conviction based on record testimony of victim who claimed sexual intercourse with defendant was without consent).

Appellant's second and final claim is that the trial court erred in permitting the victim to testify that she had been employed as a judicial secretary in Cumberland County for 19 years. He argues that this testimony was inadmissible because it was irrelevant and highly prejudicial. *See* Appellant's Brief, at 19-21.

The admissibility of evidence is within the sole discretion of the trial court, and the standard for appellate review applicable to such rulings is

whether the trial court abused that discretion. **See Commonwealth v. Hoover**, 107 A.3d 723, 729 (Pa. 2014) (citations omitted). An abuse of discretion requires a result of "manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Commonwealth v. Laird**, 988 A.2d 618, 638 (Pa. 2010) (quoting **Commonwealth v. Sherwood**, 982 A.2d 483, 495 (Pa. 2009)).

Evidence is generally admissible if it is relevant. **See** Pa.R.E. 402. Relevance is defined in our procedural rules as having "any tendency to make a [fact of consequence] more or less probable than it would be without the evidence." Pa.R.E. 401. Evidence may nevertheless be excluded "if its probative value is outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

In order to preserve a challenge to the admissibility of evidence, a party must make a contemporaneous and specific objection. **See Commonwealth v. Hairston**, 84 A.3d 657, 667 (Pa. 2014) (quoting **Commonwealth v. Brown**, 359 A.2d 393 (Pa. 1976)); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

In the present case, the victim testified on several occasions that she had been employed for the past 19 years as a judicial secretary in Cumberland County. **See** N.T. Trial, at 77, 131, 168. Significantly, Appellant did not object

during the victim's direct examination when she first disclosed that work history.  *See id*., at 77.

Later during her direct examination, the victim was asked to describe her experience in having to come to court and "talk about this situation."  *Id*., at 131.  Defense counsel immediately objected to that question, and the objection was overruled.  *See id*.  The victim then answered that she was thankful the trial was taking place in a different county than the one in which she worked.  *See id*.  Defense counsel did not object at that point to the victim's second reference to her position as a judicial secretary in Cumberland County.

Thereafter, it was Appellant's trial counsel who elicited from the victim, on cross-examination, the fact that she worked for a court:

> [Defense counsel]: And so you're in front of the Judge, you're compelled to tell the truth, right?
>
> [Victim]" That is correct.
>
> [Defense counsel]: In fact, this is very important to you because you work for a judge; right?
>
> [Victim]: That is correct.

*Id*., at 168.

It therefore appears that Appellant never lodged a contemporaneous and specific objection at trial to the victim's reference to her employment with the county court system.  The claim was therefore waived for purposes of

appeal.  *See* Pa.R.A.P. 302(a).[1]  Thus, as neither of Appellant's claims entitle him to relief, the order on review must stand.

Judgement of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/1/2025

---

[1] Even assuming that this evidentiary claim was preserved, we would find that it has no merit.  As defense counsel alluded during the cross-examination of the victim, her employment with the county court system would make it "very important" for her to "tell the truth" at Appellant's trial.  N.T. Trial, 4/1/2024, at 168.  It follows, under that rationale, that this background information was relevant and admissible evidence because it was probative of the victim's credibility, which was a critical issue for the finder of fact to resolve.